[Civ. No. 2526.   First Appellate District.—October 1, 1918.]

## MRS. FRANK KELLNER LEWIS, Executrix, etc., Appellant, v. JOHN H. HALL et al., Defendants; SAN JOAQUIN VALLEY FARM LANDS COMPANY (a Corporation), Respondent.

VENDOR AND VENDEE—PRINCIPAL AND AGENT—PURCHASE FROM VENDOR'S AGENT—NOTICE OF CHANGE IN AGENT'S AUTHORITY.—Persons who obtained from an agent holding the written authority of the owner, a contract for the sale and conveyance of land, with knowledge that the owner's authority to the agent reserved to the owner the right to modify, alter, or terminate it, and also with knowledge that a tenant of the owner was in possession, under a lease from the owner, of one-half of the land included in the contract of sale, were chargeable with notice of a modification of the agent's authority, by which the part of the land thus leased had been withdrawn by the owner from sale.

ID.—OCCUPANCY BY TENANT—NOTICE TO PURCHASER.—Occupancy of land by a tenant is notice to a prospective purchaser of the tenant's rights.

ID.—TITLE TO GROWING CROPS.—Where there has been no actual conveyance of land, the passing of title to crops growing thereon, by a mere contract for a sale and conveyance of the land in the future, is based upon the doctrine that equity treats a thing agreed to be done as actually performed.

ID.—EQUITY—PERFORMANCE BY VENDEE.—The equitable principle which treats a thing to be done as actually performed will not be applied for the purpose of defeating equity, and where a vendor has remained in possession of the land, and the vendee has not performed, nor attempted to perform, nor demanded possession of the land, nor done anything to show that he ever intended to perform, a court of equity will not apply the equitable doctrine referred to so as to convert a mere agreement into an equitable conveyance, and by so doing take away a crop from its owner and give it to one who has not done anything toward its production.

ID.—MORTGAGE OF GROWING CROP—FORECLOSURE—RECEIVERSHIP—ERRONEOUS ORDER—COSTS.—Where in an action to foreclose a mortgage on growing crops a receiver was improvidently appointed, by an erroneous order, the expense of the receivership was properly imposed upon the plaintiff who obtained the order.

ID.—NOTICE.—Where in such case the receiver's account was settled by the court in a proceeding for that purpose, of which the plaintiff had due notice, and two days later, without any further proceedings,

the court made an additional order fixing the receiver's compensation and directing it to be paid by the plaintiff, it cannot be successfully contended that the latter order was without notice to the plaintiff, since it was based upon the proceeding of which the plaintiff had notice.

APPEAL from the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Gallaher & Aten and Childers & Bruce, for Appellant.

O'Brien & Spalding, for Respondent.

LENNON, P. J.—This was an action to foreclose a mortgage given by defendants John H. Hall, Howard H. Hall, and Emmett H. Hall upon a volunteer crop of barley growing upon land belonging to the defendant San Joaquin Valley Farm Lands Company (a corporation), hereinafter referred to as the Land Company, and for which land they held a contract of purchase. The defendants Hall confessed judgment in the sum of $2,754.20, the amount of the obligation to secure which the crop mortgage was given, for which sum, with interest, judgment was duly awarded against them; but as to the Land Company the court decreed that the plaintiff take nothing, and that the rights of said company in said crop so mortgaged were superior to those of the plaintiff, and denied to the plaintiff any relief by way of foreclosure. Pending the litigation a receiver was appointed upon the prayer of the plaintiff, and in its judgment the court ordered that the balance in his hands, amounting to the sum of $1,250.88, be paid to the Land Company. The court also, after final judgment, made an order that the compensation of said receiver, amounting to the sum of four hundred dollars, be paid by the plaintiff. The appeal is by plaintiff from that part of the judgment denying her any relief against the Land Company and awarding to the latter the balance in the receiver's hands, and is taken upon the judgment-roll. Plaintiff also appeals from the order charging her with the payment of the receiver's fees, and this part of her appeal is based upon a bill of exceptions.

The facts, which are very fully found by the court and as to which there seems to be no dispute, are as follows: The San

Joaquin Valley Farm Lands Company on January 15, 1915, was the owner of some seventy thousand acres of land situated in the county of Fresno. It had its principal place of business in the City of Los Angeles, and on said date entered into a contract with Stine & Kendrick (a corporation), doing business in the city of San Francisco, by which Stine & Kendrick was employed to sell some thirty thousand acres of said land in parcels of varying size and upon certain conditions, terms, and restrictions. On April 26, 1915, the Land Company executed to its said agent a power of attorney, authorizing said agent to make, execute, sign and deliver contracts for the sale of the lands authorized to be sold by said agreement. This power of attorney made specific reference to the said contract of January 15, 1915, and to the provisions therein contained by which it could be modified, altered, or terminated. The terms of this contract, and also of said power of attorney, were known to the defendants Hall. Included in said lands so authorized to be sold was a tract of some 640 acres described as follows: The east one-half of section 32 and the west one-half of section 33 in township 15 south, range 17 east, M. D. B. & M. On December 17, 1915, the Land Company leased to one V. P. Snow one-half of this tract, namely, that part described as the west half of section 33, for a term of nine months from said date, and said Snow immediately took possession of said lands, and remained in their actual, open, and exclusive possession and occupancy until the filing of this suit. On December 22, 1915, the Land Company notified Stine & Kendrick of the execution and delivery of this lease, and instructed it to withdraw the land so leased from sale during the term of said lease. On December 27, 1915, said agent assented in writing to said withdrawal and notified the Land Company to that effect. The Hall brothers were never notified of any change or limitation of the authority of Stine & Kendrick to make contracts for the sale of lands included in the authorization of January 15, 1915, and did not know of such change or limitation until after the making and delivery of their crop mortgage hereinafter referred to; nor did they nor the plaintiff ever inquire of the Land Company whether that company had made any change in the authority of their said agent. On January 12, 1916, without the knowledge or consent of the Land Company, Stine & Kendrick, in the name of and for the Land Company,

entered into a written agreement with the defendants Hall, by which agreement said agent and attorney in fact attempted to bind and obligate the Land Company to sell and convey to said defendants Hall the 640 acres hereinbefore described, for a price of $150 per acre, of which the sum of nineteen thousand two hundred dollars was made payable two years from the date of the contract, and the remainder in eight equal annual installments thereafter, together with interest at the rate of six per cent per annum on the unpaid purchase price, payable annually. Said contract also contained the following provisions:

"Third: That any crop heretofore planted upon said premises is hereby reserved by the owner, and the possession of such of said premises so planted shall not be delivered to nor taken by said purchaser until said crop shall have been harvested and removed from said premises; . . .

"Twenty-second: The purchaser agrees, forthwith after the execution hereof, to erect on said lands above described and fully pay for suitable buildings and other permanent improvements costing not less than a sum equal to ten per cent of the total purchase price aforementioned, and likewise to immediately commence and continue in good faith the development of said lands and the whole thereof by planting thereon alfalfa, fruit or other crops acceptable to the owner, and should the purchaser fail so to do, said purchaser shall be conclusively deemed to be in default hereunder, and the owner may exercise either of the options hereinabove granted providing for the termination of this agreement or the specific enforcement of the same."

The contract in all respects as to form complied with the requirements of the Land Company. At the time of the making of this contract the land covered by it, except that part of it leased to Snow, was in the actual occupancy and possession of the Land Company, and so remained up to the time of the commencement of this action, and neither of said defendants Hall ever demanded or sought to take possession thereof. At the time of the execution of said contract to them they were insolvent, and so have been ever since, and they have at no time attempted to comply with their contract in any respect. At that time also there was growing upon said land a volunteer crop of barley which had sprung up from grain lost by the Land Company in harvesting the previous crop. On

April 5, 1915, and for a long time prior thereto the defendants Hall had been indebted to the plaintiff, as executrix of the estate of E. F. Kellner, deceased, in the sum of $2,754.20, represented in large part by a promissory note given by them, and the balance being upon an open account; and on said day they executed and delivered to the plaintiff, as such executrix, a promissory note in said sum, payable on demand, and bearing interest at the rate of one per cent per month, and at the same time made and delivered to the plaintiff a mortgage upon the said crop of barley as security therefor. At the time of accepting this mortgage the plaintiff was aware that the only right or title of the defendants Hall, if any, to said crop, arose out of the contract for the purchase of the land above described, and she also knew that said defendants Hall had not taken nor sought to take possession of the land, and that it was in the actual and open occupancy of the Land Company and its tenant, and that the defendants Hall had done nothing whatever to in any way comply with their contract for the purchase of said land. This mortgage is the instrument sought to be foreclosed in this action.

Upon the foregoing findings of fact the trial court entered, among others, the following conclusions of law; that the defendants Hall acquired no title to the said crop, or right to sell or mortgage the same, and that the mortgage to the plaintiff was of no force or effect as against the Land Company; that the brothers Hall were in default under their contract with the Land Company; that the plaintiff took said mortgage subject to the superior right of the Land Company, as vendor under said contract, to disaffirm, cancel, or terminate the same on account of said default, and that the defendants Hall at the time of the execution and delivery of said mortgage had no right or power to encumber the crops growing upon said land. Judgment was accordingly entered that the plaintiff as against the Land Company take nothing by her action.

We are of the opinion that the judgment appealed from must be affirmed. Without deciding whether, as contended by the appellant, it was the duty of the Land Company to notify all persons having knowledge of their contract of agency with Stine & Kendrick of any modification therein, it appears to us that the defendants Hall were clearly put upon notice of such modification, and that they are to be charged with knowledge of such facts as a proper inquiry upon their

part would have disclosed. Knowing that the Land Company had specifically reserved the right to change the scope of the agency of Stine & Kendrick, and that a tenant was openly in possession of one-half of the land for the purchase and immediate delivery of which they contracted, they made no inquiry of said tenant as to any rights which he claimed, which inquiry, if made, would have disclosed the fact that this part of the land had been withdrawn from sale; nor, irrespective of the open occupancy of such land by a tenant, did the defendants Hall make any inquiry of the Land Company as to whether they had exercised their reserved power of modification of their agent's authority. The authority of the agent to enter into this contract having been in fact withdrawn, the principal can be held to it only by showing some breach of duty on its part and no omission on the part of the defendants Hall which prevents them from taking advantage of such breach. The fact that a vendor of land in the occupancy of his tenant who contracts for its immediate delivery thereby places himself under the obligation to terminate the tenancy, has no bearing upon the question of notice. The occupancy of the tenant was notice to a prospective purchaser of his rights, and a pursuance of the inquiry which such occupancy in the present case made necessary on the part of the defendants Hall would undoubtedly have disclosed the lack of authority on the part of Stine & Kendrick to enter into this contract.

Quite apart from this question of notice the judgment of the court must be sustained upon the further ground that under the facts as disclosed by the findings, the title to the crop did not pass to the Hall brothers, and this, not by reason of any express reservation thereof, but because there are no facts existing in the case upon which a passage of title to the crop from the Land Company to the defendants Hall can be predicated. It is true that the appellant in her brief cites authorities to the effect that a purchaser of real estate under a contract giving him the right to possession becomes the owner of crops growing thereon when the contract was entered into, unless there be an express reservation of such crops; but where there has been no actual conveyance of the land, the passing of title to crops growing upon the land by means of a mere contract for such conveyance in the future is based upon the equitable doctrine that equity treats a thing agreed to be

done as actually performed (8 R. C. L. 360; *Speicher* v. *Lacy,* 28 Okl. 541, [35 L. R. A. (N. S.) 1066, 115 Pac. 271]; *Dunn* v. *Yakish,* 10 Okl. 388, [61 Pac. 926]), and is a principle applied only for the purpose of doing equity between the parties. An equitable principle will not be applied for the purpose of defeating equity. In the present case the Hall brothers did nothing under their contract; they did not enter upon its performance and never attempted to. They made no demand for possession of the land, and the Land Company, not having been informed of the existence of the contract, was not in a position to make a tender of possession. There is nothing to show that the defendants Hall ever intended to perform, and the only reasonable inference to be drawn from the facts is that they did not. To ask a court of equity under such circumstances to apply the equitable doctrine above referred to for the purpose of converting a mere agreement to convey into an actual conveyance, and by so doing take away a crop from its owner and give it to persons who have not raised a finger in its production, or taken or manifested an intention to take a single step under a contract by which they might have acquired it, is to invite a stern refusal. As it has been said of the statute of frauds that it will not be used for the purpose of aiding the commission of a fraud, so of a principle of equity, it will not be applied for the purpose of defeating equity. (*Sellers* v. *Solway Land Co.,* 31 Cal. App. 259, [160 Pac. 175].) In that case the court declined to invoke the equitable principle of estoppel against the party in whose favor the equities of the case seemed to lean.

The respondent, in support of the judgment, argues very persuasively that even if title to the crop passed to the Hall brothers, the subsequent exercise by the Land Company of its option to terminate the contract, coupled with its possession of the land at all times, defeated the lien, if any, of the chattel mortgage; but we think, in view of our conclusion on the points already discussed, that it is not necessary to consider and decide that question.

As to the plaintiff's appeal from the order charging her with the payment of the receiver's fees, it appears from the record that the appointment was made at the request of the plaintiff, and that the Land Company (who, as we have seen, was in possession of the land) had ample means and was able to respond to the plaintiff for any damages that might result

to her from its possession or disposition of the crop. The court in its findings declared that the appointment of the receiver was improvidently and erroneously made. Under these circumstances it would have been manifestly unjust to charge the defendant's property with the compensation of the receiver, and, on the other hand, such expense could legitimately be imposed upon the plaintiff, at whose instance the receiver was appointed. (*Frick* v. *Fritz,* 124 Iowa, 529, [100 N. W. 513]; *McAnrow* v. *Martin,* 183 Ill. 467, [56 N. E. 168]; *Ephraim* v. *Pacific Bank,* 129 Cal. 589, [62 Pac. 177].) Appellant's principal objection to this order is that it was made without notice to him, but the record, we think, does not bear out this contention. It shows that the receiver filed his report and account, praying that it be settled and his compensation fixed; that, thereafter, the Land Company filed objections to the account, and asked that the receiver's compensation be not paid from the funds in his possession, but that the court should order it to be paid by the plaintiff. A hearing was duly had upon this matter, of which the plaintiff had notice. Thereafter, and on December 5, 1916, the court made an order settling the account, but containing no direction as to the receiver's compensation. Two days later, however, and without any further proceedings, the court made the additional order of which the appellant is now complaining, and which fixed the receiver's compensation at the sum of four hundred dollars and made it payable by the plaintiff. While it would have been more usual to dispose of all the matters pertaining to the receiver's account in one formal order, we can perceive no error in covering the matter by two separate orders divided by an interval of time of two days. The second order, equally with the first, was based upon the proceeding of which the plaintiff had notice.

For the reasons given, the judgment and order are affirmed.

Beasly, J., *pro tem.,* and Sturtevant, J., *pro tem.,* concurred.