[Crim. No. 1754.   First Dist., Div. One.   Oct. 10, 1947.]

THE PEOPLE, Respondent, v. FRANK J. EGAN, Appellant.

Elizabeth Cassidy for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Frank Egan, having been convicted of murder in the first degree, and his appeal from the judgment of conviction and from the order denying his motion for a new trial having been dismissed, now moves this court to set aside the order of dismissal and for relief from his default in failing to prepare a proper record on appeal. There is no merit in either motion.

The chronological history of this case is as follows:

*September 14, 1932:* Frank Egan and Albert Tinnin, having been tried jointly and found guilty of first degree murder, were sentenced to life imprisonment. Both separately appealed, having been represented by separate counsel on the trial. Egan's notice of appeal was filed the day of sentence.

*June 30, 1933:* The attorney general filed a notice of motion to dismiss the appeal of Egan on the grounds that no steps had been taken to have a record prepared, and, further, that Egan had failed to comply with rule II, section 7, of the then Rules for Supreme Court and District Courts of Appeal. That rule required an appellant in a criminal case, within five days after giving notice of appeal, to file with the clerk a statement setting forth the grounds of the appeal, and designating the portions of the transcript desired. The rule expressly provided: "If such application is not filed within said time, the appeal shall be dismissed." (18 Cal. 2d 5.) Admittedly, no such statement was or ever has been filed, and admittedly no steps were ever taken to have a record prepared on Egan's appeal, although at one time Egan's counsel requested that the transcript on Tinnin's appeal be used on his appeal.

*July 24, 1933:* Motion of attorney general to dismiss called by this court and continued to August 28, 1933.

*August 28, 1933:* There was filed in this court an affidavit of Frank Egan dated July 14, 1933, and addressed to the

Supreme Court, in which Egan averred that following his conviction his mind became deranged and for several months he was mentally incompetent "and by reason thereof he failed to conduct his appeal or order the same to be done for him in a proper manner." He prayed that he be relieved from any default or from any violation of the rules. On this same day the motion to dismiss was argued and submitted.

*November 28, 1933:* This court filed its opinion granting the motion and dismissing the appeal. (*People* v. *Egan,* 135 Cal.App. 479 [27 P.2d 412].) The opinion states that the appeal had to be dismissed because of the failure to comply with the requirements of rule II, section 7, and holds that the provisions of that rule are mandatory, citing six cases which so hold. No petition for a rehearing or petition for hearing in the Supreme Court was filed.

*December 29, 1933:* This court issued its remittitur to the county clerk in Egan's appeal.

*September 12, 1945:* There was filed in the Superior Court of San Francisco, on a motion by Egan to annul, vacate and set aside his conviction, the affidavit of Vincent Hallinan, who had been Egan's attorney on the murder trial, averring that on September 14, 1932, he gave notice of appeal on behalf of Egan and was instructed by Egan to perfect the appeal; that within the time provided in rule II, section 7, he caused to be prepared a proper statement as to the grounds for the appeal and designated therein the portions of the record desired; that he "directed a trusted clerk from affiant's office to file the same." The name of the "trusted clerk" is not disclosed, and no affidavit is filed on his behalf. It is further averred that in reliance on the belief that the clerk would file the statement, affiant absented himself from San Francisco for two weeks; that he did not become aware of the fact that the trusted clerk had not filed the statement until affiant had prepared, and was about to file, his opening brief on the appeal; that affiant attempted to file his opening brief, but was prevented from doing so.

*August 15, 1947:* Egan filed his present motion to set aside the dismissal and for relief from his default. The motion is supported by the Egan and Hallinan affidavits above mentioned and by a new affidavit of Egan, in which the chronological facts are set forth in detail.

It should be mentioned that petitioner has sought in vari-

ous ways to challenge his conviction. In 1938 Egan petitioned the Supreme Court for a writ of habeas corpus on the ground that he had been convicted on perjured testimony. This petition was denied without opinion. In 1942 he again petitioned the Supreme Court for habeas corpus, again alleging that he was convicted on perjured testimony and also asserting that he had been unlawfully deprived of the assistance of counsel during the trial. . These issues were fully considered by the court and denied. (*In re Egan*, 24 Cal.2d 323 [149 P.2d 693], certiorari denied by the United States Supreme Court, *Egan* v. *California*, 323 U.S. 785 [65 S.Ct. 272, 89 L.Ed. 626].)

In 1945 Egan moved the superior court to set aside the indictment and judgment, and, upon denial of his motions, appealed to the District Court of Appeal. The proceeding was treated as an application for a writ of error *coram nobis*. The appellate court dismissed the first motion and affirmed the denial of the other, mainly on the grounds that *coram nobis* could not be used to review matters that could have been reviewed on an appeal. (*People* v. *Egan*, 73 Cal.App.2d 894 [167 P.2d 766].) A petition for hearing was denied by the Supeme Court.

It should also be mentioned that Egan's codefendant Tinnin appealed and the judgment of conviction and order denying his motion for a new trial were affirmed. (*People* v. *Tinnin*, 136 Cal.App. 301 [28 P.2d 951].)

By this present motion Egan is attempting, some 15 years after his conviction, and some 14 years after this court dismissed his appeal, to secure what is, in legal effect, a rehearing of this court's decision dismissing his appeal or to secure the recall of the remittitur. This relief is asked, although he failed to petition for a rehearing of this court's opinion and failed to petition the Supreme Court for a hearing. This unusual relief is asked for, not because of any newly-discovered facts, not because Egan was prevented from perfecting his appeal because of any acts on the part of prosecuting or other county or state officials, and not because of any fraud on the part of anyone, but because, so it is averred, he was emotionally upset after his conviction, and his attorney negligently failed to file the required statement of grounds for the appeal. This mental condition and negligence on the part of his attorney, and the alleged rea-

sons for it, have been known to Egan for some 14 years. No case has been, or could be, cited where such relief has ever been granted on such untenable grounds. If it be assumed that this court has the power to grant such relief, if relief were granted in this case, relief would have to be granted in every case where the defendant or his counsel negligently failed to appeal, and then years later sought to perfect his appeal, after witnesses have died or disappeared, or the facts forgotten. While the right of appeal is a most substantial one, and while the courts should be and are zealous to protect that right when the appellant acts seasonably to protect his interests, it would make a mockery of the proper administration of justice if a convicted felon could sit back for 14 or 15 years and then seek to have the propriety of his conviction reviewed on the ground, forsooth, that his attorney was negligent some 14 or 15 years before and admittedly failed to perfect the appeal. The statutes and rules reasonably regulating the right of appeal might just as well be repealed if any such rule were to be adopted. ■ A remittitur may be recalled only where the judgment sought to be recalled was secured by fraud or imposition on the court. (*Isenberg* v. *Sherman,* 214 Cal. 722 [7 P.2d 1006].)

■ There are other reasons why the motion must be denied. Cases too numerous to mention have repeatedly held that compliance with rule II, section 7, was mandatory. This rule was strictly applied. (See *People* v. *Ramirez,* 26 Cal. App.2d 715 [80 P.2d 151]; *People* v. *Schroeder,* 112 Cal. App. 550 [297 P. 105]; *People* v. *Lewis,* 219 Cal. 410 [27 P.2d 73].) The rule was followed by the Supreme Court in *Gonzales* v. *Superior Court,* 3 Cal.2d 260 [44 P.2d 320], in which it was likewise held that the curative provisions of section 473 of the Code of Civil Procedure were not applicable to criminal proceedings. The Gonzales case involved a factual situation where the equities called for relief from default if the court possessed the power to relieve, and where the application was seasonably made. Nevertheless, relief was denied.

While it is true that the Supreme Court has, on occasion, granted relief where the statement required by rule II, section 7, was not filed within the required time, such relief has only been granted under most unusual circumstances,

where the request for such relief was seasonably made, and where a proper statement was prepared and tendered. Thus in *People* v. *Megugorac,* 12 Cal.2d 208 [82 P.2d 1108], the statement was filed within 10 days of filing the notice of appeal, and the reporter's transcript was filed a few days later. In the present case no statement has ever been tendered for filing. (See *People* v. *Gonzales,* 8 Cal.App.2d 164 [47 P.2d 314].)

In the present case, if petitioner's affidavit filed in August of 1933 be considered as a petition for relief from default seasonably made, such affidavit was before the court when it passed on the motion to dismiss. Although not mentioned in the opinion it must be held that this court, in passing on the motion to dismiss, passed on and denied the request for relief from default. That decision has long since become final, and cannot be attacked at this late date. If petitioner was not satisfied with that decision he should have petitioned for a rehearing or for a hearing in the Supreme Court. This he did not see fit to do. Petitioner is faced with this dilemma—if the Egan affidavit was a petition, seasonably made, to be relieved from default, it was considered and found wanting by this court in 1933; if that affidavit be not so considered, then petitioner's laches bars him from relief. In either event the relief must be denied.

Petitioner seems to place his greatest reliance in support of his motion on *In re Byrnes,* 26 Cal.2d 824 [161 P.2d 376]. That was a petition for habeas corpus, after conviction under two indictments. The petitioner claimed he was prevented from appealing because in one case the transcript was not furnished him, while in the other the prison officials took the transcript from him. Petitioner was convicted in 1932, and, after the first trial, his counsel noticed an appeal within the required time, obtained an order for the preparation of a transcript, and then withdrew from the case. No transcript was completed in the form required for an appeal, but a copy of the testimony, in several parts as written up each day, was on file in the district attorney's office in Los Angeles at the time of his petition before the Supreme Court. Following the second conviction, Byrnes gave timely notice of appeal, but his request for a transcript was denied upon the ground that he had each day been furnished with a record of the proceedings. However, on Byrnes' statement that some portions of the testimony which he had received dur-

ing the trial were lost, the district attorney supplied the missing volumes. While incarcerated, some of the transcripts were read by other prisoners and the jailor had a faint recollection of the petitioner reading a transcript. The petitioner was quite uncooperative while in jail and was removed from the cell block to the dungeon on several occasions. The practice apparently was to remove books and papers from the cell formerly occupied by the prisoner, keep them for a time, and then to destroy them. A search in January, 1944, failed to reveal the transcript and it might have been destroyed.

The Supreme Court, after reviewing these facts, and after referring to two federal cases, stated (p. 828):

"The conclusions reached in these cases rest upon fundamental principles of justice which compel a determination that one who has been prevented by officers of the state from presenting the record upon which his appeal, regularly taken, can be heard, should have an opportunity to do so.

"By the timely notices of appeal from the judgments of conviction, under which Byrnes is now in custody, the District Court of Appeal acquired jurisdiction over the two actions, and as in the federal courts, lack of a record on appeal does not affect its jurisdiction."

It will be noted that in the Byrnes case the appeal was "regularly taken"—i. e., the notice of appeal and the required statement were filed as required by law. Relief was granted because petitioner had been prevented by officers of the state from presenting or securing his record on appeal. In this respect the case resembles *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 868], where relief was granted for the failure to file a notice of appeal within the statutory time where such failure was caused by the negligence of the prison officials. The case can have no application to the present proceeding where the required statement was not filed solely because of the negligence of the attorney for petitioner.

Some mention is made by petitioner to the fact that the old rules applicable to appeals, including rule II, section 7, were superseded on July 1, 1943, by the new Rules on Appeal, it apparently being petitioner's thought that, since the new rules do not contain a provision such as old rule II, section 7, we should apply the new rules to this appeal, taken in 1933, and so relieve him from what would now not be a

default. To state the proposition is to refute it. Such retroactive application of the rules is not permissible.

The motion to set aside the order of dismissal and the motion for relief from default are denied.

Ward, J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 6, 1947.