[Civ. No. 21834. Second Dist., Div. One. Aug. 15, 1957.]

WILLIAM S. HART, JR., Appellant, v. FRANCIS GUDGER, as Executor, etc., et al., Respondents.

*Assigned by Chairman of Judicial Council.

S. V. O. Prichard for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), Baldo M. Kristovich, Assistant County Counsel, Spray, Gould & Bowers and Krystal & Paradise for Respondents.

FOURT, J.—This is an appeal by the plaintiff from a judgment entered by the trial court after having sustained, without leave to amend, the separate demurrers of defendants Francis Gudger, the executor of the last will and testament of

William S. Hart, deceased, and the county of Los Angeles (the principal and residuary legatee under said will) to the plaintiff's third amended complaint.

In January, 1947, the appellant instituted a contest of the probate of the will of his father, William S. Hart, Sr. He was unsuccessful in that litigation and judgment went against him. By the third amended complaint in the matter now before us the appellant sought to state a cause of action to vacate and set aside the previous judgment of the superior court in the will contest in his father's estate (*Estate of Hart* (1951), 107 Cal.App.2d 60 [236 P.2d 884], wherein he alleged, among other things as grounds for the contest, both duress and undue influence) upon the ground that the judgment in the will contest was procured by the perpetration of an extrinsic fraud.

The learned trial judge prepared an exhaustive and carefully written memorandum on sustaining the general demurrers, which we adopt as a part of this opinion and which reads as follows:

''General demurrers are urged against the Third Amended Complaint to set aside a judgment against plaintiff, contesting the will of his father, William S. Hart. The verdict and judgment sustained the validity of the will, against his objections, and has long since become final.

''To upset this final judgment, plaintiff contends that evidence material to the contest—the 'last page' of his aunt's will —was fraudulently suppressed by the defendants or some of them.

''Facts must be alleged—not conclusions given—showing a different judgment would have resulted in the will contest had the alleged fraud not occurred; or, as is stated in other cases, that he has 'a sufficiently meritorious claim to entitle him to a trial of the issue' upon the allegations made. There must be reasonable certainty that plaintiff would have emerged in a more advantageous position. *Wilson* v. *Wilson,* 55 Cal.App.2d 421, 427 [130 P.2d 782]; *Huron College* v. *Yetter,* 78 Cal.App.2d 145, 150-151 [177 P.2d 367]; *Olivera* v. *Grace,* 19 Cal.2d 570, 578-579 [122 P.2d 564, 140 A.L.R. 1328]; *Parsons* v. *Weis,* 144 Cal. 410, 417-418 [77 P. 1007]. In the Third Amended Complaint do such facts appear? Assuming the facts alleged are true, do they tend to establish undue influence, as required in pleading? (*Estate of Bixler,* 194 Cal. 585, 589 [229 P. 704].) Do they show that the 'last

page' was so material as to promise with reasonable certainty that had it been produced, the result would have been different?

"Upon the present Third Amended Complaint, plaintiff cannot avoid any deficiencies of the prior verified complaints by omitting the allegations previously made without explanation. It is proper for the court to consider the prior pleadings. *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *cf. Neet* v. *Holmes,* 25 Cal.2d 447, 469 [154 P.2d 854]; *Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721, 724 [161 P.2d 677]; *Neal* v. *Bank of America,* 93 Cal.App.2d 678, 682 [209 P.2d 825]; *Slavin* v. *Glendale,* 97 Cal.App.2d 407, 410 [217 P.2d 984]; *Uchida Inv. Co.* v. *Inagaki,* 108 Cal.App.2d 647, 654 [239 P.2d 644]; *Pike* v. *Archibald,* 118 Cal.App.2d 114, 118 [257 P.2d 480]; *McDonald* v. *State,* 130 Cal.App.2d 793, 795-796 [279 P.2d 777]; *Owens* v. *Traverso,* 125 Cal.App.2d 803, 808 [271 P.2d 164]; *Bollotin* v. *State Personnel Board,* 131 Cal.App.2d 197, 202 [280 P.2d 509]. *Lee* v. *Hensley,* 103 Cal.App.2d 697, 709 [230 P.2d 159]. This is particularly true, since request is made that the general demurrer be sustained without leave to amend. Whether a cause of action still might be stated under the existing law may be gauged by the totality of sworn facts presented in the various verified complaints considered to date. (*Williamson* v. *Joyce,* 137 Cal. 151 [69 P. 980].) They will be considered in determining whether the complaint can be truthfully amended so as to obviate any legal objection as to its sufficiency.

"The cases cited establish the proposition that however unnatural and harsh courts or juries may believe a will to be, when it disinherits a son or daughter, it is within the legal power of a competent testator to will his property as he sees fit. If at the time of writing the will he has full freedom of choice to express his wishes, it will not be disturbed. His information may be faulty and his prejudices unrational; but if the testamentary act is free from duress and overpowering influence, *at the time of the execution of the will,* the law sustains it. (*Estate of Sheppard,* 149 Cal. 219 [85 P. 312]; *Estate of Relph,* 192 Cal. 451, 465 [221 P. 361].)

"Before considering the details of the Third Amended Complaint, a general summary of the facts which thus far have been alleged will be helpful. From the various verified complaints it appears:

"1. William S. Hart died June 23, 1946, and a will dated

September 9, 1944, was admitted to probate (Superior Court file No. 257566) on July 26, 1946. The estate consisted completely or almost entirely of property inherited from his sister, Mary E. Hart, who died on October 1, 1943.

"2. Relative to her estate, it has been alleged:

" 'A one-half partnership agreement of decedent's [William S. Hart's] earnings between said Mary E. Hart and said decedent at the inception of decedent's motion picture career caused her at the time of her death to have an estate in excess of $700,000 in cash and securities; that said decedent [William S. Hart] paid most of said Mary E. Hart's expenses from his share and at her death said decedent's estate [Mary E. Hart's] consisted of in excess of $100,000 in cash and securities and two real properties, Horseshoe Ranch, located at Newhall, California, and a home located at 8341 De Longpre Avenue, Hollywood, California.' (Complaint. . . .)

" 'That she executed a will, dated the 20th of April, 1914, in the town of Westport, Connecticut, which bequeathed such possessions as she might hold to said decedent, William S. Hart, and made him the sole executor of her will.' (Complaint. . . .)

This will was probated, and under it, William S. Hart received the property as sole heir, to the exclusion of her other relatives.

"3. There was another and a later holographic will (Complaint . . .); a document entirely written, dated, and signed by her, bearing date of September 23, 1940, (Third Amended Complaint . . .), 'wherein, among other items, she made provision for certain specific legacies and gifts to charity' (Third Amended Complaint . . .), 'and said document executed by Mary E. Hart contained provision for the maintenance of the William S. Hart Museum and Park at Newhall;' (Third Amended Complaint . . .). It likewise appears provision was made 'as to monies and properties to her sister, Mrs. Frances V. Bierck, for whom decedent [William S. Hart] had a dislike, and to her two grandnieces, said Mary Ellen Hogewoning and Beatrice Hogewoning Hunt Cochrane, . . . and also made certain that monies would be provided for the establishment, creation, and maintenance of three monuments that would perpetuate the name of decedent [William S. Hart] and said Mary S. Hart; that two of said monuments under said Mary E. Hart holographic will were to be created from . . . the said Horseshoe Ranch located at Newhall, California, and said home, located at 8341 De Longpre Avenue, Hollywood,

California' (Complaint . . .) ; and the devisees and legatees are set forth in the Third Amended Complaint, paragraph III, which by paragraph V are said to be substantially those named by her.

"It was alleged (Complaint, par. IV; First Amended Complaint, par. VII and exhibits) that the *'last page'* of such document read 'Re- Will Sept. 23/40. My brother Wm. S. Hart has proven to me he is not fully responsible for his actions, therefore I appoint Wm. S. Hart *Jr.* as executor of my estate. Am mailing MEH Westport Conn copy of this page ''just in case''

Mary E. Hart'

"MEH was Mary Ellen Hogewoning, grand-niece of Mary E. Hart, living at all times herein concerned in Connecticut.

"4. This document, including the 'last page,' was exhibited to him (Third Amended Complaint . . .). William S. Hart had reason to believe this was his sister's last will and testament (Third Amended Complaint . . .) in which she had substantially disinherited him.

"Upon the probate of her estate, following her death on October 1, 1943:

" 'That the original first copy of said LAST PAGE of said holographic will mysteriously disappeared and was not submitted to the probate court; that said decedent [William S. Hart] strenuously objected to his attorney submitting remainder of said holographic writings to the Court for probate and as a result of this controversy the partial holographic writings were filed with the Court;' (Complaint . . .).

"The probate judge thereafter ruled that the holographic will, thus rendered incomplete, were 'mere precatory notes or memoranda of suggestion or recommendation to the petitioner, William S. Hart, as sole devisee and beneficiary under said last Will of said deceased (Mary E. Hart) dated April 20, 1914 . . .' (Complaint. . . .)

"5. Of Mary E. Hart, it has beeen alleged:

" 'That said Mary E. Hart had a great dislike and jealousy of plaintiff and had been informed and shown especially at this time [1940] of said decedent's [William S. Hart] great love and trust for plaintiff; that by said LAST PAGE, said Mary E. Hart . . . maliciously made plaintiff, an eighteen year old boy, at that time, the point of decedent's suspicion by making plaintiff the executor of her Will instead of said decedent, giving a cruel fact [that William S. Hart was 'not

fully responsible for his actions'] for her reason; that she never gave plaintiff any knowledge of either said holographic will or said LAST PAGE, nor that she had named him her executor of any will. . . . That when said holographic will came to the attention of the said decedent, he was shocked and amazed . . . that said last page so impinged on his mind that he no longer trusted his son, the plaintiff, and formed the belief that plaintiff knew, understood and agreed with the intentions of said Mary E. Hart when, in fact, plaintiff had no knowledge of said LAST PAGE, or said holographic will.' (Complaint. . . .)

"No reason is assigned why the 'last page' was not produced by Mary Ellen Hogewoning in the course of probate of her great-aunt's estate. Mary Ellen Hogewoning, of course, is alleged to have lived in Connecticut, while the probate proceeding was in Los Angeles. Had the document been held to be complete with the 'last page' submitted to the probate court, (Prob. Code, § 25; 53; *Estate of Plumel,* 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100]) she would have received a bequest, otherwise denied her by her mother's will of 1914. Likewise, the plaintiff would have been entitled to serve as executor, and to receive the emoluments thereof. It is alleged that William S. Hart strenuously objected to submitting the document to the probate court (Complaint . . .). It is alleged that Mary E. Hogewoning was under a duty to disclose this 'last page' to the court, and to the plaintiff, as executor. (*Cf.* Prob. Code, §§ 320, 385; *Estate of Moore,* 180 Cal. 570 [182 P. 285].) The present proceeding, however, does not relate to the probate of the Estate of Mary E. Hart, against which the complaints are not presently directed.

"6. Whatever the duty of Mary Ellen Hogewoning may have or may not have been to produce her copy of the 'last page' upon this probate proceeding (Prob. Code, § 320), she did not do so, nor did she reveal its existence to plaintiff until 1953.

"Accepting the allegations of the Third Amended Complaint and the preceding ones as true, this 1940 will of Mary E. Hart is her last will and testament; and in its now complete form is entitled to probate as such (Prob. Code, §§ 53, 101, 323, 385, 510), and those named therein were and are entitled to her estate as of the date of her death (Prob. Code, § 28). (The date on the 'last page' is sufficient: *Lakemeyer's Estate,* 135 Cal. 28 [66 P. 961, 87 Am.St.Rep. 96].)

"7. It is alleged that certain of the defendants 'were

likewise advised that Mary Ellen Hart had executed said document, including its last page, and certain of the defendants . . . utilizing their knowledge of that circumstance, threatened said William S. Hart that unless he would make good to them forthwith the bequests contained in said document dated September 23, 1940, and would make a will to substantially carry out the intent of said Mary Ellen Hart, they would expose said William S. Hart and take away from him all of the property that he had received in the probate proceedings . . .; that decedent, fearing these threats and the consequent loss of the monies which he had received from the Mary Ellen Hart estate and which he needed to maintain his property for the remainder of his lifetime . . . further agreed to and did execute his purported will dated September 9, 1944, wherein he complied substantially with the wishes, desires and mandates of Mary Ellen Hart . . . that William S. Hart by the same means was induced to disinherit the plaintiff herein who he was thereby caused to believe was fully cooperating with the defendants herein as the proposed executor of said document dated September 23, 1940, and said William S. Hart was thereby caused to fear that unless he complied the defendants and this plaintiff would have him declared incompetent, as suggested by Mary Ellen Hart in the last page of said document and would publish to the world their claim that he was incompetent.' (Third Amended Complaint. . . .)

''8. William S. Hart made and executed the will here under attack on September 9, 1944 (Second Amended Complaint, par. II; Superior Court file, Probate 257566).

*''This was eleven months after the death of his sister, Mary E. Hart.* Plaintiff infers (Second Amended Complaint par. IV) that decedent at the time was sick and had suffered 'torment, fear, pain and misery . . . at alien hands.'

''In this will, the present defendants were named as devisees and legatees (Complaint . . .; First Amended Complaint . . .; Second Amended Complaint . . .; Third Amended Complaint . . .). The will was to detriment of plaintiff (Second Amended Complaint . . .). William S. Hart died on June 23, 1946, and plaintiff is his sole heir at law (Second Amended Complaint . . .). The will of William S. Hart was admitted to probate on July 26, 1946. Plaintiff filed a petition to revoke the probate on January 26, 1947. Trial commenced on January 3, 1950, and judgment, now final, was rendered

against him on the contest. (Second Amended Complaint. . . .)

"9. All of the grounds of such contest are not specifically set forth in the several complaints filed in the proceeding. In the Third Amended Complaint there is a specific claim of duress and undue influence exercised upon William S. Hart by his sister, to cause him to adopt her intentions (in her ineffective holograph) to be his own in his will, and thereby to exclude plaintiff from the estate to his detriment. Plaintiff having been before the court and asserted his contentions, is now bound by the final judgment in his will contest unless he can bring himself within the principle that although final, the legatees and devisees may be enjoined upon equitable grounds from benefiting by the judgment.

"It is alleged that defendants knew of and concealed the existence of the 'last page' from plaintiff during his contest of his father's will; and that it was material in showing the 'undue influence' claimed in 1, 3 and 4 above.

"It is alleged that equitable intervention to overturn the judgment in the will contest is required, to the end that distribution be stayed and that funds and property already distributed be impressed with a trust in his favor.

"It is urged that the suppression of the 'last page' by defendants during the will contest prevented plaintiff fraudulently from having his day in court; hence, the judgment in the contest should be declared void.

"It is the plaintiff's theory that concealment and nondisclosure of the 'last page' deprived him of a full and fair hearing, effectively depriving him of opportunity to present his case. (*Gale* v. *Witt*, 31 Cal.2d 362, 365, 367 [188 P.2d 755].)

"There must be finality to litigation. A judgment in the will contest rendered by the jury, that there was no undue influence or other testamentary impediment to effectiveness of the will of William S. Hart must stand, unless for cogent equitable reasons, extrinsic to the trial. (*Pico* v. *Cohn*, 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336].)

"In the first three complaints filed, there was presented different theories as to why the 'last page' allegedly is material to plaintiff's cause.

"I. *Complaint*: (1) That by the 'last page' Mary E. Hart maliciously made this plaintiff executor of her will of September 23, 1940 (on the ground his father was incompetent to serve as such) which disinherited his father, and that the

father, believing plaintiff sided in with Mary E. Hart, his sister, acted on this 'undue influence' to disinherit plaintiff; (2) that the 'last page' 'mysteriously disappeared' and the attempted will of Mary E. Hart was denied probate, William S. Hart taking her estate as sole legatee and devisee; (3) that the existence of the 'last page' led him to carry out the wishes of Mary E. Hart in his own will after her death, and that this was 'undue influence' on her part.

"II. *First Amended Complaint*: Ground (1) of the Complaint is continued; (2) of the Complaint is continued; (3) of the Complaint is continued.

"III. *Second Amended Complaint*: Ground (1) of the Complaint was omitted; (2) that the 'last page' was not presented to the probate court as part of Mary E. Hart's will; otherwise the same; (3) same.

"IV. *Third Amended Complaint*: Former specification (2), that the 'last page' was not presented at probate of Mary E. Hart's will, is omitted; and it is alleged (4):

" (a) That during life and after her death William S. Hart was under the influence of Mary E. Hart;

" (b) Though dead, her will was imposed upon him at the time of his testamentary act;

" (c) That her will of September 23, 1940, was 'entirely *written, dated and signed by her*' and thereby she left her property to the defendants.

" (d) That William S. Hart willed the property (received from her by failure of her 1940 will and under her 1914 will) to defendants substantially as she had provided in the (suppressed) 1940 will;

" (e) That certain of the defendants had forced him to do so by threatening to disclose he had suppressed the 'last page' of Mary E. Hart's 1940 will;

" (f) That he acquiesced; and the effect of making effective her testamentary intent was to cause William S. Hart to disinherit plaintiff; and the ground specified as (1) in the Complaint and First Amended Complaint is reinstated and it is also alleged that William S. Hart executed his will accordingly for fear that if he did not follow the will of Mary E. Hart, the defendants would 'publish to the world their claim he was incompetent.'

"10. Plaintiff asserts that on November 1, 1953, he learned of the existence and character of the 'last page' of the holograph of Mary E. Hart for the first time. (Third Amended Complaint. . . .)

"Plaintiff alleges in the Third Amended Complaint, in relation to his will contest, that the presentation of said last page was necessary and essential to the full presentation of said contestant's case, and was the *only evidence* by which contestant could have shown an essential element of his contest, to wit: that said document constituted in the mind of William S. Hart something more than precatory notes but was in actuality a mandate from his sister, Mary E. Hart, which required him, among other things, to establish a museum and park at Newhall, even to the exclusion and disinheritance of his son, the plaintiff. (Second and Third Amended Complaints. . . .) This is tantamount to saying that the 'precatory notes' plus 'the last page' made William S. Hart consider that the testamentary intent of his sister as to her estate was clear, and he carried it out in his will, including therein, any property interest of his own in the same, exclusive of what came to him by Mary E. Hart's will of 1914. That the only *interest* William S. Hart had in the Newhall estate came by the 1914 will from her is alleged in paragraph IV, page 3, lines 30-31, page 4, line 1 of the Complaint; paragraph VI, page 3, lines 29-31, page 4, lines 1-6, of the First Amended Complaint, and is omitted from the Second and Third Amended Complaints.

"The Petition to Revoke the asserted will was filed on January 26, 1947. The trial upon it commenced January 3, 1950, and was decided adversely to this plaintiff. He has alleged in this action 'That the grounds for said suit were so extremely meritorious that plaintiff would have obtained verdicts on all grounds of contest and final judgment in his favor, and would have prevailed in all such matters regarding his said Petition of Contest had there not been said fraudulent and wrongful acts, extrinsic and collateral, exercised and directed against him.' (Complaint. . . .) Such allegations are not found in the Third Amended Complaint. The allegations of paragraphs VI, VII and VIII of the Third Amended Complaint allege affirmative concealment of the 'last page' from him. (*Cf. Caldwell* v. *Taylor,* 218 Cal. 471, 477 [23 P.2d 758, 88 A.L.R. 1194].)

"A. The alleged action of Mary E. Hart in making plaintiff executor does not tend to establish any duress or undue influence on her part. The 'last page' would be immaterial on such an issue. (*Cf. In re Kaufman,* 117 Cal. 288, 295 [49 P. 192, 59 Am.St.Rep. 179].) But in paragraph V of the Third Amended Complaint it is alleged that *the*

*undue influence was operative after the death of Mary E. Hart and existed almost a year later* when William S. Hart made his will in question. Would proof of such allegations now made (aided by the last page) fall within the accepted definitions of 'undue influence' so far as her influence was concerned? One is constrained to hold they do not, under such cases as *Estate of Finkler,* 3 Cal.2d 584, 599 [46 P.2d 149]; *In re Llewellyn's Estate,* 83 Cal.App.2d 534, 564 [189 P.2d 822, 191 P.2d 419]; *In re Webster's Estate,* 59 Cal.App. 2d 1, 7 [137 P.2d 751]; *In re Presho's Estate,* 196 Cal. 639, 650 [238 P. 944]; *Estate of Anderson,* 185 Cal. 700, 707 [198 P. 407]; *Estate of Langford,* 108 Cal. 608, 615, 624-626 [41 P. 701]; *In re McDevitt,* 95 Cal. 17, 33 [30 P. 101].

''At the very time of making the will, Mary Hart *was not living.* She could not have exerted pressure *directly* on the testamentary act, as the cases require, before undue influence can be established. (*Cf. In re Kaufman,* 117 Cal. 288, 295 [49 P. 192, 59 Am.St.Rep. 179]: Mother's dislike of daughter allegedly fostered by the mother's sisters, leading to disinheritance.)

■ ''Likewise, the 'undue influence' must have resulted ĭn a benefit to the one exerting the influence. Influencing Mr. Hart to do what *she* wanted with *her* property cannot reasonably be considered undue influence. Her will of 1940 is entitled to probate (*Estate of Moore,* 180 Cal. 570, 575 [182 P. 285]).

■ ''B. A will conveying her estate to Hart, accompanied by directions as to what she wished done with it, does not make his compliance therewith the subject of 'undue influence' or fraud. The trial court in the Estate of Mary E. Hart is alleged to have held that, incomplete as it was presented as an entire will, it was precatory. William S. Hart was the executor of her estate.

■ '' 'While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. All expressions indicative of his wish or will are commands.' (*Estate of Lawrence,* 17 Cal.2d 1, 7 [108 P.2d 893], and cases cited; *In re Hamilton,* 181 Cal. 758, 769 [186 P. 587].) Her holograph (even without the last page) and her will of 1914 were properly considered together. (Prob. Code, § 101; *Estate of Sloan,* 7 Cal.App.2d 319, 336, 338, 342 [46 P.2d 1007].)

''The Third Amended Complaint asserts that the words were

*more than precatory* and that the 'last page' would prove it. Conceding (as is alleged and we later conclude) that the complete holograph of Mary E. Hart was a valid last will and testament, plaintiff's case is not assisted. The judgment of the Probate Court in the Estate of Mary E. Hart, that the words directed to the Executor were precatory, cannot be assailed in a contest directed against the will of William S. Hart. The precatory words being a command to him, his will cannot be assailed because he carried out the command therein by fulfilling the purposes expressed by Mary E. Hart in respect to her own property, willed to him.

"Upon this view of the facts alleged in the Third Amended Complaint and facts alleged in the previous verified Complaints, it would appear to be quite immaterial that the beneficiaries of Mary E. Hart's bounty exercised pressure upon William S. Hart to secure that which he was legally and equitably bound to afford them.

"Nevertheless, we will consider the other contentions as alleged.

■ "Treating the disclosure of the 'last page' as 'newly discovered evidence,' it is clearly established that the judgment cannot be vacated because of such a discovery, even if this were a motion for new trial on such a ground. The reason is that the *materiality* is not shown, despite the conclusions pleaded that it is material; and it does not appear to be of such character that a different result would be probable if upon trial it was shown that William S. Hart 'felt obliged' to carry out his sister's intentions. *Oberlander* v. *Fixen & Co.,* 129 Cal. 690 [62 P. 254]; *Bliss* v. *Security-First Nat. Bank,* 81 Cal.App.2d 50 [183 P.2d 312].

"C. Assuming that the 'last page' was deliberately withheld from plaintiff by all of the defendants, as alleged, it is not the type of fraud for which the courts will destroy the finality of a judgment, rendered in the cause where he was a contestant and had the opportunity to be heard. *Flood* v. *Templeton,* 152 Cal. 148 [92 P. 78, 13 L.R.A.N.S. 579]; *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]; *Huffaker* v. *Gray,* 38 Cal.App. 605 [177 P. 183]; *In re Griffith,* 84 Cal. 107, 112-113 [23 P. 528, 24 P. 381].

"If upon the contest, it had falsely been testified that there was no 'last page,' would the judgment be overturned? Silence, in the face of the claimed duty of disclosure, would seem to be the same thing. ■ Yet rightly or wrongly, false testimony is held not to furnish the basis for an action

to set aside the judgment (*Adams* v. *Martin,* 3 Cal.2d 246 [44 P.2d 572]; *Stiebel* v. *Roberts,* 42 Cal.App.2d 434 [109 P.2d 22]); ▮ nor will a judgment be set aside because an adversary did not disclose evidence in his or her possession. *Huffaker* v. *Gray,* 38 Cal.App. 605 [177 P. 183]; *Allen* v. *Currey,* 41 Cal. 318, 322; *In re Griffith,* 84 Cal. 107, 112 [23 P. 528, 24 P. 381]; *McGeehee* v. *Curran,* 49 Cal.App. 186, 194-195 [193 P. 277]; *People* v. *Egan,* 73 Cal.App.2d 894, 899-900 [185 P.2d 82]; *Hogan* v. *Hogan,* 131 Cal.App.2d 281, 283-284 [280 P.2d 64].

"In the Third Amended Complaint, on information and belief, it is necessarily inferred that William S. Hart suppressed the 'last page' of his sister's will. (Paragraph V. . . .) It is then alleged on information and belief that the defendants Frances V. Bierck, Mary Ellen Hogewoning and Beatrice Hogewoning Hunt knew this and threatened to expose William S. Hart unless he made the bequests provided in the will of Mary E. Hart; and in consequence, he inserted such bequests in his will, to carry out Mary E. Hart's intentions; and that this was 'undue influence.'

▮ "It seems clear that procuring William S. Hart to redress a fraud, could not in itself be fraudulent; nor under the circumstances alleged, if true, would this be an 'undue influence or advantage' to the detriment of one otherwise entitled, since defendants were but seeking restitution of their own.

"In considering these allegations, fair dealing is inferred. (Code Civ. Proc., § 1963; Civ. Code, § 3529.) The provisions of Mr. Hart's will are consistent with the construction he desired to do what honor and the precatory mandate impelled him to do as to the property he had received from his sister. Taking the language of the court as a directive, he may have regarded himself as a trustee, charged with carrying out the 'precatory words.'

▮ "But if we must predicate judgment on the bare allegations of the Third Amended Complaint and those preceding it, plaintiff's allegations affirmatively establish a lack of equity upon which to base this proceeding. If William S. Hart affirmatively prevented the holographic will of Mary E. Hart from taking effect by suppressing the last page or pages (which Mary E. Hart anticipated, executing a duplicate, 'in case'), then William S. Hart was not entitled to the property, nor is the plaintiff, who complains now that that property derived from Mary E. Hart was not left to him. Such

holographic will is entitled to probate, under the allegations made. If so, William S. Hart received no title he could pass on to plaintiff, if he had not been disinherited, by his own last will. The right to set aside the judgment in the will contest must rest in equity. 'An equitable principle will not be applied for the purpose of defeating equity.' *Lewis* v. *Hall,* 38 Cal.App. 329, 335 [176 P. 171]; *Miller* v. *Ash,* 156 Cal. 544, 559 [105 P. 600] : ('nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence, and where these are wanting, the court is passive and does nothing').

"Assuming plaintiff would be successful in overthrowing the will of his father, it would be a Pyrrhic victory. The defendants, under the facts alleged, ultimately would be able to take the property in question directly under the holographic will of Mary E. Hart. To force them to do so now would involve time, expense, and more litigation, to no good end.

"Nowhere has it been suggested that the overthrow of the will of William S. Hart would vest the plaintiff with property of decedent, other than that derived from the Estate of Mary E. Hart. If it is contended that Mary E. Hart's influence led William S. Hart to disinherit plaintiff from other property, the 'last page' leading decedent to believe his son 'was against him' and believed him incompetent, it seems clear that this would not establish 'undue influence' for the reasons hereinabove considered in A, *supra.* Likewise it would appear by the verified Complaint that plaintiff did in fact consider his father 'an aged, incompetent and sick man' . . .; that he was in 'torment, fear, pain and misery' and 'sick and dying.' . . . There has been laches in the filing of this proceeding, following discovery of the 'last page.'

The demurrer to the Third Amended Complaint is sustained without leave to amend."

 We further are of the opinion that the present action is barred by the provisions of Code of Civil Procedure, section 338, subdivision 4, which provides, in substance, that an action for relief on the ground of fraud or mistake must be brought within three years, and that "[t]he cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

That the statute applies to actions of the type under consideration, see *Turner* v. *Milstein,* 103 Cal.App.2d 651, 659 [230

P.2d 25]; *Scott* v. *Dilks,* 47 Cal.App.2d 207 [117 P.2d 700]; *Snyder* v. *Security-First Nat. Bank,* 31 Cal.App.2d 660, 664 [88 P.2d 760].

Appellant's verified complaint demonstrates that he first learned, more than three years prior to the filing of the present action on January 25, 1955, of the existence of the "last page."

There is no sufficient showing in the third amended complaint, or any other complaint, of any excuse for the late filing, as is required by the law. (*Crabbe* v. *White,* 113 Cal. App.2d 356, 359-360 [248 P.2d 193]; *Johnson* v. *Ware,* 58 Cal.App.2d 204, 207 [136 P.2d 101]; *Bradbury* v. *Higginson,* 167 Cal. 553, 558 [140 P. 254]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698, 701-702 [16 P.2d 271]; *Daily Tel. Co.* v. *Long Beach Press Pub. Co.,* 133 Cal.App. 140, 145 [23 P.2d 833]; *Tognazzini* v. *Tognazzini,* 125 Cal.App.2d 679, 686-687 [271 P.2d 77]; *Lewis* v. *Security-First Nat. Bank,* 58 Cal.App.2d 827, 829-830 [137 P.2d 864]; *Jackson* v. *Master Holding Corp.,* 16 Cal.2d 824 [108 P.2d 673]; *Vertex Inv. Co.* v. *Schwabacher,* 57 Cal.App.2d 406, 415 [134 P.2d 891]; *Phelps* v. *Grady,* 168 Cal. 73, 77 [141 P. 926].)

It has been frequently said, and correctly so, that there must be an end to litigation.

Judgment affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

A petition for a rehearing was denied September 11, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 8, 1957.

---

*Assigned by Chairman of Judicial Council.