H. C. WARREN, APPELLANT, v. BILL DeLONG, JR., JEWELL DeLONG, IRVING DeLONG, ALBERT DeLONG, MELVIN DeLONG AND MAY DeLONG ANGUS, RESPONDENTS.

No. 3283

January 8, 1940.                                97 P. (2d) 792.

*J. W. Dignan,* for Appellant:

*Thomas J. Salter,* for Respondents:

**OPINION**

By the Court, DUCKER, J.:

Plaintiff has appealed from a part of the judgment.

The allegations of his complaint show the execution and delivery on or about June 1, 1927, of a real and chattel mortgage of ranching property by W. M. DeLong and Mabel DeLong to plaintiff and the Winnemucca State Bank & Trust Company, a corporation, for the purpose of securing the payment of the former's promissory notes in the principal sum of $36,000; the subsequent assignment, prior to the commencement of this

action, of the mortgage by the corporation to plaintiff; the foreclosure thereof, in which plaintiff obtained an order of sale of all of the property described in the mortgage and that the proceeds thereof be applied in satisfaction of the judgment in favor of plaintiff, which judgment was in the sum of $56,529.44. The complaint further shows the sale of all of the real and personal property then remaining and in existence subject to the lien of mortgage for the sum of $25,000, which was applied to and credited in partial payment of said judgment and decree of foreclosure in favor of plaintiff, and leaving a balance in the sum of $31,573.59, due and unpaid on said mortgage.

The charging part of the complaint herein is as follows: "That during the life of the said mortgage and while the lien thereof, in favor of the plaintiff was in full force and effect upon and against all of the property of the said mortgagors, and prior to the commencement of the action for the foreclosure thereof on the 16th day of November, 1935, the said defendants, above named, jointly and severally took, purchased, used, consumed and converted to their own use certain of the said mortgaged property with full notice and knowledge of the existence of the said mortgage lien thereon, consisting of hay, grain, feed and pasture, including the use and occupation of all of the ranch premises of the mortgagors, and with the continual use and occupation of all of the water rights and range rights belonging thereto, without the permission, consent or knowledge of the mortgagees, of the value of Eight Thousand Dollars in lawful money of the United States, no part of which sum has been paid to the plaintiff, and the whole thereof is now due, owing and unpaid from the said defendants to the plaintiff."

The defendants, who are brothers and sister, answered, admitting all of the complaint alleged as matter of inducement, and denying all of the said charging part of the complaint, save and except they admitted their

knowledge of the existence of the mortgage. They further answered by setting up an affirmative defense to the effect that they paid plaintiff for the hay, grain, feed and pasture, etc., alleged to have been purchased and consumed by them under an agreement with plaintiff to exchange therefor certain labor of the defendants in connection with the mortgaged property.

For a further defense defendants alleged that all claims of plaintiff against defendants for a period prior to three years from the date of the filing of the plaintiff's complaint are barred by the provisions of chapter 4, section 8524, subdivision 3, Nevada Compiled Laws 1929.

In addition the defendants set up nine counterclaims. Plaintiff demurred to all of said defenses upon the ground that none constituted a defense to plaintiff's cause of action. The demurrer was overruled. The defenses were denied in plaintiff's reply. The action was tried by the court without a jury. The court found that defendants took, purchased, used, consumed and converted to their own use during the years 1927 to 1934, inclusive, hay and pasture under the mortgage to plaintiff, the value of which was the sum of $4,194.60. In this connection the court further found that this action was brought on October 7, 1936, and that no recovery could be had by plaintiff against the defendants for the hay and pasture taken and used for the first six years, because his action was subject to the statute of limitations pleaded by defendants. The value of the hay and pasture taken and used by them in the years 1933 and 1934 was found to be the sum of $1,457, and due and owing to the plaintiff by the defendants.

The court found against defendants on three of the counterclaims, and for them on the remaining six in the aggregate amount of $4,161.14; and that the amount of plaintiff's judgment in the sum of $1,475 should be deducted therefrom, leaving a balance due, and owing and unpaid from plaintiff to defendants in the sum of

$2,704.14. Judgment was rendered and entered against plaintiff in the sum of $2,704.14.

A part of the judgment appealed from is that based upon the finding that the hay and pasture purchased, used and consumed, and converted to their own use by the defendants during the years 1927, 1928, 1929, 1930, 1931 and 1932, was subject to their plea of the statute of limitations. The action of the court in this respect is assigned as error. Plaintiff contends that the three-year statute of limitations applied by the court does not apply, because the action, as shown by the charging part above set out, is upon an implied contract to pay for the hay and pasture; and that having pleaded the wrong statute of limitations defendants cannot avail themselves of a statute not pleaded. He says: "The facts which constituted the tort are alleged in the case at bar, then the tort is plainly waived and the suit is on the implied contract."

As defendants concede that this is a case in which the tort could have been waived, it is unnecessary for us to determine whether it is indeed such a case, or discuss the cases cited by plaintiff to that point.

The allegations of the complaint are adapted to the statement of a cause of action for conversion. It is charged: "Defendants * * * took, purchased, used, consumed, and converted to their own use, certain of the said mortgaged property with full notice and knowledge of the existence of said mortgage lien thereon, consisting of * * * without the permission and consent or knowledge of the mortgagees."

■ No waiver appears from these allegations, which state the gist of the action. The word "purchased" is mere surplusage.

■ As the cause of action stated in the complaint arises out of a tort, the waiver should clearly appear either by express allegation, or by the manner of stating the cause of action. 1 C. J. S., Actions, sec. 50, p. 1144; Braithwaite v. Akin, 3 N. D. 365, 56 N. W. 133. Summarizing from the latter case it is stated in note 92 to

the above text: "There is a distinction between cases where the same act constitutes a breach of contract and a tort, so that plaintiff has a cause of action in contract without any waiver of tort, and cases where the cause of action arises out of tort, and there is no cause of action in contract except by virtue of the waiver of the tort. In cases of the latter character the waiver must be averred either expressly or by the manner of stating the cause of action, for the waiver is an indispensable element in the cause of action."

This is essential to the end that the court may know the character of the action, and that the defendant may not be embarrassed or misled in making his defense.

■ As stated in Knickerbocker & Nevada Silver Mining Company v. Hall, 3 Nev. 194: "As the defense which the defendant is permitted to make may to some extent depend upon the character of action made out by the complaint, the plaintiff should be compelled to show clearly by his pleadings whether his action is based upon tort or contract."

In the instant case the question is not left in doubt by the allegations of the complaint. The defendants and the lower court construed them as stating a cause of action in tort. They were correct in their conclusion. The trial court therefore did not err in finding that no recovery could be had by plaintiff for the hay and pasture taken and consumed for the first six years, by virtue of the three-year statute of limitations pleaded by defendants. In this respect the judgment should be affirmed.

The other part of the judgment appealed from is that based upon the findings in favor of the six counterclaims.

Plaintiff contends that said counterclaims are not pleadable as such in this action because they do not "arise out of the transaction set forth in the complaint as the foundation of the plaintiff's claim," nor are they "connected with the subject of the action."

The complaint alleges the right to the possession of

the property therein alleged to have been converted, to be by reason of a mortgage which plaintiff held and foreclosed.

The counterclaims are based on alleged damages sustained by defendants by reason of the wrongful procurement of the appointment of a receiver by plaintiff in the foreclosure suit; and the wrongful taking by said receiver of certain property owned by defendants. Around the giving of the mortgage and its subsequent foreclosure revolves all of the circumstances in this action. The same property is involved and the damages asked in the counterclaims were sustained in the foreclosure suit. The mortgage is the basis of the transaction out of which arose all the elements here involved. We quote with approval the following taken from the decision of the trial court in its ruling on the demurrer to the answer:

"In the case of King v. Coe Commission Co. [93 Minn. 52], 100 N. W. 667, the plaintiff alleged that he was induced by fraud to enter into a series of agreements or transactions with defendant in which he paid money to defendant for investment, and that defendant did not make the investments, and plaintiff sued for a return of the money. Defendant denied the alleged fraud and counter-claimed, claiming that, in the series of transactions, plaintiff agreed to pay defendant further sums to protect the investments, which sums defendant advanced for plaintiff. It was held a proper counterclaim as arising from the same transaction set up in plaintiff's complaint. In the case referred to the court said:

" 'The term "transaction," as used in the statute, is obviously broader than the term "contract," and authorizes matters to be set up as counterclaims, which could not be so pleaded as arising upon the contract relied upon by plaintiff. The cause of action arises from the transaction set forth in the complaint when the combination of acts and events, circumstances and defaults, upon which the rights of the parties are based, when viewed in one aspect, result in plaintiff's right of action,

and, when viewed in another aspect, result favorably to defendant. The transaction is not necessarily confined by the facts stated in the complaint, but the defendant may set up new facts, and show the entire transaction, and counterclaim upon that state of facts as the transaction upon which plaintiff's claim is founded. 25 Am. & Eng. Ency. Law, 589.' "

■ In the case of Scott v. Waggoner, 48 Mont. 536, 139 P. 454, 455, L. R. A. 1916C, 491, the action was based upon a lease of a hotel and was for rent and waste, to which a counterclaim was set up for wrongful eviction and conversion of personal property. In holding the counterclaim to be properly pleadable, the court said:

"That these provisions are designed to enable parties litigant to adjust their differences in one action, so far as that can logically be done, and thereby to prevent multiplicity of suits, is made plain by the further provision that, if the defendant omit to set up a counterclaim in the classes mentioned in subdivision 1 of section 6541, neither he nor his assignee can afterwards maintain an action against the plaintiff thereon. Section 6547. For statutes so highly remedial, a broad and liberal construction is required, in order that the purposes designed by them shall be most completely served. * * *

"As pointed out by Mr. Pomeroy (Code Remedies, div. 6, subd. 1), the solvent of the difficulty lies in the breadth and scope of the terms 'transaction' and 'subject of the action.' The term 'transaction' is not legal and technical, it is common and colloquial; it is therefore to be construed according to the context and to approved usage. (Rev. Codes, sec. 8070.) As so construed, it is broader than 'contract' and broader than 'tort,' although it may include either or both; it is 'that combination of acts and events, circumstances and defaults, which, viewed in one aspect, results in the plaintiff's right of action, and viewed in another aspect, results in the defendants right of action' (Pomeroy's Code Remedies, sec. 774), and it applies 'to any dealings

of the parties resulting in wrong, without regard to whether the wrong be done by violence, neglect or breach of contract.' "

The above definition of the term "transaction" is set forth in 1 Bancroft's Code Pleading, p. 547, with citation of additional authorities.

■ The counterclaims were properly pleaded.

■ In the former suit brought by plaintiff against William M. DeLong and Mabel DeLong, his wife, to foreclose the mortgage, Jewell DeLong and Bill DeLong, Jr., were joined as parties defendant. In that suit plaintiff sought and secured the appointment of a receiver. The receiver took possession of certain personal property. Defendants here base their counterclaims for damages upon the theory that in securing the appointment of said receiver the plaintiff acted maliciously, unlawfully and without probable cause. The trial court disallowed counterclaims one, two, and seven, and gave defendants judgment on the remaining six. No appeal is taken from the action of the court in disallowing one, two, and seven. The main objection urged by plaintiff against the allowance of the counterclaims, is that no adjudication was ever made, by any court, prior to the time of pleading said counterclaims, that the securing of the appointment of the receiver in the foreclosure suit was *unlawful*, malicious and *without probable cause.* The general rule is: "That a right of action against a party wrongfully procuring the appointment of a receiver accrues to the party injured because of such receivership, on the adjudication that the appointment was improper." 23 R. C. L. page 45, par. 46, note 11; note, Ann. Cas. 1915D, at page 1040.

To give a right of action, however, the adjudication need not be an express adjudication against the propriety of the appointment.

The supreme court of Montana, in the case of Lyon v. United States Fidelity & Guaranty Co., 48 Mont. 591, 140 P. 86, 89, Ann. Cas. 1915D, 1036, makes the following pertinent observation: "Nor does any controlling

reason assert itself for the conclusion that, in a case where the rightfulness of the appointment depends upon the merits of the plaintiff's claim, there must be any express adjudication against the propriety of the appointment. It may be, as held in Ferguson v. Dent [C. C.], 46 F. [88] 98, that the ultimate defeat of the plaintiff does not always establish the impropriety of the appointment; but one cannot rightfully procure a receiver for property in which he has no interest, and where the very cause of action is a claim of ownership or interest in the property, where the right to a receiver is made to depend upon that, and where the final decree specifically adjudges the ownership of the property to be in the defendant, it seems gratuitous to say that from this a finding against the propriety of the receivership cannot be implied or, if implied, cannot be sufficient."

In the mortgage foreclosure suit the court found the personal property involved to be the property of Jewel DeLong and Bill DeLong, Jr., which was a sufficient adjudication that the appointment of a receiver was improper, and the taking of the property of Jewel DeLong and Bill DeLong, Jr., wrongful. Lyon v. United States Fidelity & Guaranty Co., supra. There are four defendants in this action who were not parties to the original action, viz: Irving DeLong, Albert DeLong, Melvin DeLong, and May DeLong Angus. The last-named parties are shown to be part owners of the personal property involved in the foreclosure suit, and to have suffered damages by reason of the appointment of the receiver and the taking possession of and retention by him of said personal property. The additional defendants are in a position to counterclaim in this suit. Stevens v. Simmons et al., Tex. Civ. App., 61 S.W. (2d) 122; St. Johnsbury & Lake Champlain R. Co. v. Hunt, 55 Vt. 570, 45 Am. Rep. 639.

The contention of plaintiff that the counterclaims cannot be maintained because of no adjudication as to the wrongfulness of the appointment of the receiver in the foreclosure suit, is without merit. The judgment

of the lower court as to the counterclaims three, four, five, six, and eight, is affirmed.

■ Counterclaim nine is for damages on account of attorney fees expended by defendants in defending against the foreclosure suit. In that suit relief was granted plaintiff, as well as to two of the defendants. It cannot be determined from the record the amount expended in defending against the foreclosure of the mortgage, or the amount expended in the establishment of ownership to the personal property. It appears from the findings that the amount was paid for defending the entire action. As to the foreclosure suit, no attorney fees could be recovered. Being thus uncertain, no recovery can be had, and the judgment is ordered modified so as to eliminate therefrom the allowance of $750 for attorney fees. August v. Gonsalves, 83 Cal. App. 245, 256 P. 584.

As so modified the judgment is affirmed.

ON PETITION OF REHEARING

March 1, 1940.

*Per Curiam:*

**Rehearing denied.**