[L. A. No. 22601.   In Bank.   Feb. 11, 1954.]

RECORD MACHINE & TOOL COMPANY (a Corporation), Respondent, v. PAGEMAN HOLDING CORPORATION (a Corporation), Appellant.

Max Tendler and Olin N. MacKay for Appellant.

Fred N. Howser and Arthur A. Worth for Respondent.

CARTER, J.—Defendant appeals from a judgment in an action by plaintiff to have declared its rights under a conditional sales contract, in which plaintiff is buyer and defendant seller, to have it determined how much plaintiff still owes under the contract, and for damages for breach of the contract by defendant.

According to the findings, plaintiff and defendant contracted in writing for the sale of real property, personal property and

patents. The purchase price was $100,000, $10,000 of which was paid on execution of the contract and the balance was to be paid in installments of $1,000 ''or more'' plus interest on the first day of each month commencing June 1, 1947; plaintiff was to have immediate possession of the property but could not dispose of or remove it; ''in the event'' plaintiff performs the contract and makes all required payments, defendant ''shall then but not otherwise'' convey the real property with title insurance and transfer good and sufficient title to the personal property and patents, defendant to retain title to the property until plaintiff has performed; risk of loss is to rest with plaintiff, and it is to have during the life of the contract an exclusive license to use the patents. Time is made of the essence of the contract.

Possession of the property was given to plaintiff under the contract. The court found that plaintiff had performed as required by the contract and was not in default. On August 23, 1951, to be carried into effect September 5, 1951, plaintiff tendered the then unpaid balance of the purchase price in the amount of $26,549.18. (Defendant questions the tender, a matter later discussed.) Defendant refused the tender. Defendant did not own prior to the contract and has never owned one of the patents agreed to be sold under the contract.

On September 14, 1951, plaintiff commenced his action setting forth the foregoing facts and asking that it be declared that it was not in default under the contract and would not be in default by failure to make the payments on the purchase price until defendant gave good title to all the property and that the matter be handled by an escrow to hold the purchase money and title papers. It also claimed damages in that it had been unable to sell at a profit two lathes (part of the property sold under the contract) because the contract forbade disposal thereof by plaintiff and defendant refused to deliver the documents of title.

The court found as above indicated, and further, that plaintiff should not be required to run the risk of being in default for failure to make the purchase price payments nor should it be required to make them without assurance the defendant could give good title (such assurance was unlikely as defendant did not own one of the patents); that payment through escrow was proper to avoid the risk; that defendant had been in default under the contract since its inception and after the tender because of its inability to deliver good

230

title to the patents which it did not own; that since the refusal of the tender plaintiff was the owner of all the interest of defendant in all the property described in the contract; that defendant should within 5 days of entry of judgment deposit with the clerk instruments transferring all the property to plaintiff; that on September 5, 1951, plaintiff owed $26,524 under the contract and had since paid $7,640.12, leaving a balance of $18,884.21; that it was impossible for defendant to give good title to one of the patents because it did not own it; that defendant was not entitled to any further payments under the contract until it could give good title to all the property but plaintiff might make payments to the clerk; that under the contract the delivery of the instruments of title transferring good title was to be made concurrently with the full payment of the purchase price; that plaintiff could not recover damages in the action as it was one for declaratory relief but might recover same in another action; that to avoid further litigation the trial court might order the method of completing performance of the contract and retained jurisdiction to do so.

The judgment declared the foregoing rights and obligations and further ordered defendant to deliver to the clerk transfer instruments giving plaintiff good title to all the property and if it failed to do so the clerk should execute them; that they were then to be delivered to plaintiff; that any payments made by plaintiff to the clerk (plaintiff was authorized but was not required to make them) should be used to pay for title insurance and the balance was to be held by the clerk until further order of the court; that defendant was "remitted to an action for the balance due under" the contract "as payments become due" thereunder; that if payments were made by plaintiff to the clerk, defendant might obtain them upon petition to the court showing it had deposited instruments transferring good title to the property; that defendant was afforded the opportunity to deliver such good title but if it failed to do so, plaintiff had its action for damages.

Summarized, it appears that the judgment declares plaintiff to be the owner of all defendant's interest in the property and defendant must transfer good title thereto. If it cannot or does not do so, it must bring an action for the payments due under the contract as there provided, presumably taking into consideration the amount thereof and the effect of its inability or failure to give good title to all the property.

Plaintiff may, but is not required to make payments to the clerk, and if it does, defendant cannot get them unless it produces good title to all the property; any damages claimed for breach by defendant must be asserted in another action.

Defendant appealed, contending (1) That the tender was not valid and therefore the effect on the rights of the parties given to it by the judgment was erroneous; (2) that the court failed to dispose completely of the controversy, as it should in an action for declaratory relief, in that it did not determine the value of the patent to which defendant could not give good title so as to show the amount by which the unpaid balance of the purchase price should be reduced.

With regard to the tender, it appears that on August 22, 1951, plaintiff sent a writing to defendant in which it offered to pay on September 5, 1951, the unpaid balance of the purchase price stating that it had opened a specified escrow for that purpose with a named bank in which it had instructed the bank to pay the sum of $26,549.18 to defendant concurrently with the bank's receipt from the defendant of instruments transferring good title to the property together with certificates of title insurance. It also advised defendant that it had a purchaser ready, able and willing to buy part of the personal property provided it could obtain title thereto. The money was not deposited with the bank but plaintiff had two other escrows, one of which was for the sale of some of the personal property, the money for which had been deposited, and the other was one under which the bank was to make plaintiff a loan on the real property to be secured by a trust deed thereon and which would require, of course, that title be vested in plaintiff. All escrow charges were paid by plaintiff. Defendant refused to proceed, stating its reasons in a letter, dated September 4, 1951, in which it was claimed the arrangement did not comply with the sale contract in that : (1) The amount was not correct; (2) there was no duty on defendant to act through an escrow; (3) payments were to be made to defendant by mail at a stated address rather than at a bank; (4) defendant was not required to deliver the transfer instruments and title insurance until a reasonable time after it had received full payment. The letter concluded by stating that if plaintiff desired to pay the unpaid balance through escrow, defendant would give the matter consideration. The court found that when defendant sent its letter of refusal it could not, and knew it could not, give good title to the patent it did not own and that its refusal

was based solely on that reason; that the reasons stated in its letter were not true to the defendant's knowledge; that the tender was made in good faith but the refusal was in bad faith and that plaintiff was able and willing to perform; that an ordinary and customary incident to the transaction of securing title insurance (the contract called for such insurance on the real property) would be that payment by plaintiff would be held in abeyance until such insurance had been procured.

Defendant now contends that the tender was faulty on the ground that under the contract the unpaid balance could be paid only on the first of the month, the day of payment of installments on the purchase price, and not on September 5th as was offered; that plaintiff did not have the ability to pay the unpaid balance because it had to be realized from the two other escrows above mentioned.

■ It has been held that when money is to be paid at a specified time, the creditor is not required to accept it before that time. (*Hanson* v. *Fox,* 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A.N.S. 338], and *Rhorer* v. *Bila,* 83 Cal. 51 [23 P. 274], holding that a vendee in a contract for the sale of real property calling for payments in installments on specified dates cannot put his vendor in default by tendering the entire unpaid balance and demanding a deed to the property.) ■ Here, however, the trial court reasonably construed the contract in the case at bar to authorize payment of the unpaid balance by plaintiff before all the installments became due because the contract authorized the payment of $1,000 "or more" on the first day of every month. Thus there is no doubt that an amount in excess of $1,000 could be paid and that excess could consist of the entire unpaid balance. It was contemplated that such payment could be made at times other than the first of the month as another clause of the contract gave plaintiff 60 days grace "within which" he could cure any late payment. Hence any time within the 60 days the $1,000 "or more" could be paid.
■ Moreover, defendant should not be permitted to maintain its position because it was notified of the tender on August 22 to be effective on September 5th. While it did mention the prematurity of the tender of all the entire balance in its refusal of the tender, it waited until September 4, after the first of the month had passed, before it notified plaintiff of its refusal. Plaintiff was not given the opportunity to change the effective date of its tender to the first of

September which it would have been able to do had defendant acted promptly after the August 22d notice.

On the issue of plaintiff's ability to produce the required amount of money under its tender, several factors should be noted. It is conceded that defendant could not give good title to the patent at any time and apparently never will be able so to do. The court found that the only real reason for defendant's refusal of the tender was its lack of ability to give good title to the patent. In its rejection it specified many technical grounds which indicated that even if it had known that the money was to be supplied by the loan on the real property and the proceeds of the sale of some personal property it would still have rejected the tender. The bank was ready and willing to make the loan on the real property and there was no obstacle to the sale of the personal property. The purchase price had been deposited in escrow and it is not important that plaintiff did not prove that notice of bulk sale was given. It does not appear that the sale would not have been completed. The conditional sale contract required defendant to furnish title insurance on the property, a proceeding which ordinarily requires time, and is customarily done through an escrow when the delivery of the deed and title insurance and the payment of the purchase price are to be concurrent. The defendant in its letter rejecting the tender made no real objection to an escrow as it said in the closing paragraph that it would consider such an arrangement. For these reasons we do not believe defendant's objection to the tender should prevail.

The trial court failed to find the value of the patent to which defendant could not give good title, or, stated in another way, the damage plaintiff would suffer by defendant's inability to perform the contract in that respect. However, it did declare that title to all the property had passed, ordered defendant to execute transfer instruments, and permitted, but did not require, plaintiff to pay the purchase price. The court should have completed the determination of the controversy to avoid further litigation. The inability of defendant to supply good title to the patent, one item of the property sold, would have a bearing upon the amount of the reduction which should be made in the purchase price payable. An important factor in that determination would be the value of the patent and the proportion of the purchase price applicable to all of the property allocable to the patent. Defendant, as well as plaintiff, has an interest in having that determina-

tion made as otherwise it has passed title to all the property without knowledge of what amount of the balance of the purchase price it is entitled to receive. It is true that defendant objected during the proceedings to broadening the scope of the determination and the court declared that defendant's action to recover the purchase price as well as plaintiff's action for damages were preserved, but because of the scope of the judgment with respect to plaintiff's rights in the property (it in effect specifically enforces the contract on behalf of plaintiff) justice requires that defendant's rights also be determined. ■ The trial court has discretion as to the extent of the relief to be afforded in a proceeding for declaratory relief (5 Cal.Jur. 10-Yr.Supp. [1944 Rev.], Declaratory Relief, § 22 et seq.), but where a case is made for such relief the court should not deny it. (*Lord* v. *Garland,* 27 Cal.2d 840 [168 P.2d 5].) ■ Where a contract is specifically enforced the court should do complete justice. (23 Cal.Jur. 509 et seq.) That has not been done here.

The judgment is reversed and the trial court is directed to render the same judgment heretofore given, but in addition, shall ascertain and declare the rights of the parties with respect to the payment of the unpaid balance of the purchase price, if any, under the contract, and the effect thereon of defendant's inability to give good title to the patent it does not own. Each party shall bear his own costs of this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.