[Civ. No. 7564. Fourth Dist. Sept. 30, 1965.]

J. CLARKE SMITH et al., Plaintiffs, Cross-defendants and Appellants, v. EDWIN E. HILL, Defendant, Cross-complainant and Respondent.

Wilson & Wilson and Fred A. Wilson for Plaintiffs, Cross-defendants and Appellants.

Holcomb, Kassel & Ward, Surr & Hellyer, James W. Dilworth and Joe Sax for Defendant, Cross-complainant and Respondent.

WHELAN, J.—Plaintiffs (Smith) were the owners of real property described in part as lots 14 and 15 situated in San Bernardino County and of certain equipment used in the operation on said real property of a rock-crushing plant and the preparation of sand and gravel for sale; the material so processed was obtained from other property under lease from Lytle Creek Water and Improvement Company (Lytle). Plaintiffs also were the owners of an easement upon two other lots described as lots 16 and 17 for the purpose of stockpiling sand and gravel, which easement was a residual interest in said lots left after their condemnation for flood control purposes by the federal government. The easement had no value except as used with lots 14 and 15 and was necessary for use with a rock, sand and gravel processing plant on those lots.

On March 1, 1952, Smith entered into a written contract for the sale to Hill of lots 14 and 15 together with all the equipment used in connection with the business for the sum of $102,875, payable at the rate of $1,000 per month including interest at 6 per cent on the balance remaining from time to time unpaid, and at the same time entered into a sub-lease with Hill of the property from which the crude material was obtained. That property was the only source of such material of good quality convenient to lots 14 and 15.

The agreement provided that time was of the essence; that should default be made the balance of the principal sum together with interest should become immediately due and payable at the option of Smith. Hill also gave as additional security a chattel mortgage upon the personal property covered by the contract.

In January of 1953, Hill leased the batch plant[1] to Tri-City Concrete Company (Tri-City) for $300 per month. In 1958, the lease from Lytle expired and a new lease for five years with an option to renew for five years additional at a rent to be negotiated was given to Smith who again sub-leased to Hill for five years but without an option for renewal.

In 1959, under threat that the rock-crushing plant and other operations might be treated as a nuisance, Hill spent about $13,000 to eliminate the conditions complained of. He also renovated and enlarged the plant over the years so that from a capacity of 50 tons per hour in March 1952, it had, in June of 1961, a capacity of about 200 tons per hour. In all, the investment of Hill in the real property, including the original amount of the contract, betterments and new equipment, was about $400,000 in June of 1961. Its fair market value on June 2, 1961, was $322,706.

Commencing in 1957, Hill borrowed from the plaintiffs $25,750, evidenced by six promissory notes which, with one exception, bore interest at the rate of 8 per cent per annum. The latest maturity date of any of the notes was December 7, 1960. On February 4, 1957, to secure the payment of the notes that had then been executed and the payment of any further sums that might be lent by Smith, Hill assigned to Smith all of the rights under the agreement for the purchase of the real and personal property. The assignment provided that in the event default should be made in any of the provisions of the agreement for the purchase or in the payment of any of the notes or indebtedness, the rights of Hill under

[1] Apparently for the preparation of batches of concrete.

the purchase agreement "shall at the option of the said first parties [plaintiffs] forthwith terminate."

In January of 1961, Hill owed income tax and other federal taxes for which liens were recorded in the amount of $14,318.77; and property taxes of the County of San Bernardino on the subject property were delinquent in the sum of $3,078.58. Hill was also delinquent in the payment of principal and interest on the various notes, of which only one had been paid in full, and was beginning to fall behind in the payments of the monthly instalments under the purchase contract.

On January 26, 1961, Smith served upon Hill a notice of default based upon the failure to make payments and perform unspecified covenants under the purchase agreement, and which declared an election that the unpaid balance of the purchase price, together with interest thereon, be immediately due and payable and demanded the surrender of the real and personal property.

Smith told Hill that the notice was given only for the purpose of protecting Smith against the federal tax liens and that Hill should ignore it; Smith told Hill's bookkeeper that the notice could be ignored. Thereafter, Smith accepted three payments of $500 each, the last in April of 1961. Smith, from the time of the contract of sale, continued to occupy and use a small office building on the property sold to Hill; when he requested it he was given information of the financial condition of the business by Hill's bookkeeper; he was in frequent contact with Hill after the serving of the notice. He did not indicate to Hill, prior to June 2, 1961, when this action was commenced, any intention of attempting to enforce the demands contained in the notice of January 26.

Smith's complaint asked for termination of all of Hill's rights in the agreement and in the sub-lease, for restoration of possession of the real and personal property, including the property covered in the lease, and a decree quieting Smith's title to all of said property, for the amount due on the notes evidencing the various loans, for attorney's fees of $5,000 and for the appointment of a receiver. The receiver was appointed ex parte upon Smith's furnishing a bond in the sum of $15,000 under the provisions of section 566, Code of Civil Procedure. The receiver, Johnson, qualified upon posting a bond in the sum of $2,000 for the performance of his duties and took possession of the property on June 2, 1961.

An answer to the complaint and a cross-complaint were filed on July 24. During the interval, both oral and written

negotiations were carried on between counsel for Smith and Hill, looking toward a solution of the controversy. The first written communication was the letter of June 8, 1961, from Smith's counsel (Wilson) to Hill's counsel (Holcomb), which contained among other conditions reduction of Hill's total indebtedness to Smith to the sum of $40,000, to be paid in monthly instalments of $1,000 including 6 per cent interest.

Meanwhile, Hill was negotiating a sale of the property to one Johnson and one McCook for the sum of $227,000. On June 19, two escrows were opened, one for the sale of real property for $25,000 cash to be deposited before July 5, 1961; and one for $202,000 for the personal property, good will, inventory and leasehold interest. In this second escrow, $50,000 cash was deposited and additional cash in the sum of $77,000 was to be deposited prior to July 5, 1961. The balance of the $75,000 in the second escrow was to be evidenced by a promissory note. The prospective purchasers were ready, willing and had the ability to perform the terms of the escrow agreement. Information as to those arrangements which required from Smith a deed to the real property and an assignment of the lease, was conveyed to Wilson. On June 26, 1961, Wilson submitted a demand as to the items that Smith would require paid, which were restricted to payment of the balances on the contract price and of the various notes with accrued interest thereon, the premiums on the bonds in connection with the receivership, some items of costs not exceeding $75, attorney's fees of $5,000, and payment of any deficiencies between assets of the receivership and its liabilities which included two loans of $5,000 each authorized by the court and obtained by the receiver from Smith. That demand, which in fact constituted an offer, had not been accepted by June 29 when Wilson wrote that Smith demanded $10,000 for an assignment of his interest in the lease from Lytle inasmuch as the sub-lease to Hill did not contain any option for a renewal; and extra compensation for Smith's interest in lots 16 and 17. The letter stated the writer's opinion that the closing of the escrow by July 5 was out of the question. On July 7, 1961, Wilson wrote that Smith demanded $20,000 for transfer of his leasehold interest, his rights to lots 16 and 17, his office building on lots 14 and 15, and for indemnification against increase in income taxes (by reason of receiving the total payment in a lump sum), and an additional $20,000 for the cost of the receivership, other than the bond premiums, but including any deficit arising from the opera-

tion of the receivership; Hill would have the right to collect and retain accounts receivable of the receivership. Within a day or two thereafter, Wilson by telephone informed Holcomb that the demand for the assignment of the leasehold interest and of the easement interest in lots 16 and 17 would be $10,000 rather than $20,000.

The negotiations not having been concluded before the date for the closing of the escrow, Hill filed a motion for the dissolution of the receivership which was denied on September 25, 1961, and on that date Hill filed a petition in the U. S. District Court under the provisions of chapter 11 of the Bankruptcy Act.

Hill's answer set up the fact that Smith had told Hill that the notice of January 26, 1961, was served only to protect Smith against any tax claims, and the acceptance of payments by Smith after that date. The cross-complaint alleged oral representations made by Smith during the negotiations for the sale and purchase of the business and property that all rights in connection with the business were to be sold; and the expenditure by Hill of over $200,000, for improvements to the business in reliance upon such representations; a second cause of action alleged a malicious interference on the part of Smith in the sale of the business by Hill; a third cause of action asked for a declaration of the rights of the parties with reference to the easement for stockpiling on lots 16 and 17.

On October 25, 1961, the referee in bankruptcy made his order that the receiver deliver possession of the property and business to Hill.

After Hill obtained repossession of the business on October 25, 1961, he entered into some arrangement with Tri-City, which thereafter operated the business and was doing so at the time of trial, paying Hill $1,000 per month for his services. Under the terms of the agreement, which was not introduced into evidence, Tri-City had paid into a trust account for Hill's benefit the sum of $89,748.15 from October 25, 1961, to October 31, 1962, to be held pending the outcome of the litigation.

On November 21, 1961, a petition was filed with the referee in bankruptcy that the receiver be allowed to reclaim possession, which was denied on January 16, 1962. A petition for review of the referee's order denying the petition of the receiver to reclaim was filed on January 23, 1962, and was denied on March 14, 1962. On April 12, 1962, a notice of appeal from that order of denial was filed with the Court of

Appeals for the Ninth Circuit; on April 29, 1963, the Circuit Court of Appeals reversed the order of the District Court and on May 28, 1963, denied a petition for rehearing. The appellant's brief states that these various petitions and the appeal to the Circuit Court of Appeals were filed by Smith.

The receiver filed an account and report on June 6, 1962, to which Hill filed objections.

The hearing of the receiver's account and report was ordered consolidated with the trial of the action which commenced on October 22, 1962, and concluded on November 21, 1962. Findings and judgment were signed and filed on July 16, 1963. Separate findings were made on the receiver's report from those made on the complaint and cross-complaint. The findings and judgment with respect to the receiver's account will be considered first.

In the findings on the receiver's report, the court treated the report as being a final report and relieved the receiver of all responsibility for events occurring subsequent to October 25, 1961, when Hill retook possession. (Receiver had on June 14, 1963, filed a petition that he be restored to possession, which was denied on June 23, 1963.)

The court charged the receiver for expenditures held to have been made improperly, for others held to have been of no value to the receiver or Hill, for materials purchased which were of no benefit to the business and had no salvage value, for replacing equipment parts held to have been unnecessary, for loss on an account receivable of $14,173.49 representing material negligently sold on credit, for damage to equipment held to have been caused by the receiver's failure to use ordinary care in hiring and in supervising employees incompetent to operate the equipment and held to have been avoidable had the receiver used ordinary care in hiring and in supervising employees.

There was a finding that there were accounts receivable of $5,539.11 representing proper credit sales which the receiver was ordered to turn over to Hill; that there were accounts payable in the amount of $8,432.22 properly incurred.

The court concluded that the receiver was chargeable with $33,773.49 against which he was allowed credits for the accounts payable, and for two items totaling $2,031.62 representing debts of Hill existing at the commencement of the receivership which had been paid by the receiver; that the receiver personally and the plaintiffs should pay all the accounts payable.

There was a finding as follows:

"VIII With respect to the Receiver's actions, as found in Paragraphs I through VII hereinabove, the Court finds that at all times during the operation of the business that the Plaintiff J. CLARKE SMITH was, in fact, acting in concert with the Receiver, and that the Plaintiff SMITH was, in fact, operating said business from June 2, 1961 to October 25, 1961, with the knowledge and consent of the Receiver, and that, therefore, the acts and conduct chargeable to the Receiver from June 2, 1961, shall also be chargeable to J. CLARKE SMITH, Plaintiffs."

The court found that the receiver was not entitled to any fees and that the costs of the receivership should be assessed against the plaintiffs; that the receiver was not entitled to attorney's fees paid or incurred during the course of the receivership to the plaintiffs' attorneys; that in connection with the employment of said attorneys, rule 240(b) of the California Rules of Court had not been complied with.

Smith and the receiver contend that no personal judgment against the receiver is proper, but that a judgment against him is payable only from the funds in his hands. They dispute each of the separate amounts with which the receiver is charged and the finding imposing liability upon Smith for the acts and conduct of the receiver as well as the denial of attorney's fees, receiver's fees and costs of the receivership.

Before considering the propriety of the various items for which the receiver was charged, consideration will be given to finding VIII heretofore quoted in full and to the following provisions in the judgment:

"That the Receiver . . . and the Plaintiffs, J. CLARKE SMITH and MARGARET D. SMITH, are indebted to the Defendant, EDWIN E. HILL, for the following:

" 1. $ 450.00 improperly paid by the Receiver to Wilson & Wilson;
" 2. 600.00 improperly paid by the Receiver to Mr. Sovay;
" 3. 500.00 for improper purchase of unnecessary and worthless screens;
" 4. 400.00 for improper purchase of unnecessary and worthless wier plates;
" 5. 1,850.00 for unnecessary replacement of crusher jaws;
" 6. 14,173.49 for credits improperly extended to Valley Sand, Inc.;
" 7. 3,000.00 damage to crane;
" 8. 2,500.00 damage to large Hough Loader;

" 9. 1,800.00 damage to small Hough Loader;
"10. 3,000.00 damage to Peterbilt truck;
"11. 1,000.00 damage to International truck;
"12. 4,000.00 for damage to Euclid trucks;
"13. 500.00 for damage to Shovel
 "$33,773.49 Total

"That from said sum of $33,773.49, for which the Receiver and Plaintiffs are chargeable, they are entitled to deduct the following:

"1. Accounts payable ................. $ 8,432.22
"2. Royalties paid on behalf of the de-
 fendant ........................ 1,941.30
"3. Power paid on behalf of Defendant.. 90.32
 "TOTAL........ $10,463.84

" . . . . . . . . . .

"That the Receiver and Plaintiffs shall be ordered and instructed to personally pay all accounts payable as set forth in the Receiver's Report."; and the further provision that the amounts to be paid by defendants as the condition of specific performance should be "less the sums of $23,309.65."

The imposition of liability upon the Smiths in this fashion has not been based upon any precedent cited by defendants. It must be classed as an unusual procedure.

No such relief was asked in the pleadings; the pretrial order is silent as to any such issue. Evidence was received tending to show activity by Smith amounting to interference in the receiver's operation of the business. Such evidence should not be held to have been received upon an issue of vicarious liability of the plaintiffs, but was admissible upon the issue presented by the pleadings as to the necessity of the receivership, and issues as to the allowance and amount of compensation for the receiver.

Smith would be held responsible under section 566, Code of Civil Procedure, if he procured the appointment of the receiver wrongfully, maliciously or without probable cause. Such liability, being contractual, would be limited to the amount of the bond, which was $15,000. (*Jones* v. *Richardson*, 9 Cal.App.2d 657 [50 P.2d 810].)

"The liability on the bond is based on the error of the plaintiff in obtaining the appointment, however innocent of intentional wrong the error was. Whether or not the plaintiff has committed error cannot be determined until a trial

on the merits.'' (45 Am.Jur. § 97, p. 86.)

■ Liability upon the bond is enforced in a separate action. (*Heim* v. *Mooney*, 23 Cal.App. 233 [137 P. 616]; *Cook* v. *Terry*, 19 Cal.App. 765 [127 P. 816].)

■ The right of action against a party wrongfully procuring the appointment of a receiver accrues on the adjudication that the appointment was improper. (*Warren* v. *De Long*, 59 Nev. 481 [97 P.2d 792]; 45 Am.Jur. § 123, p. 104.)

■ If Smith had acted maliciously and without probable cause, he could be held liable for malicious prosecution, independent of the statutory liability. ■ Such cause of action may accrue as the result of a civil as well as a criminal action brought without probable cause and maliciously. (*Hurgren* v. *Union Mutual Life Ins. Co.*, 141 Cal. 585 [75 P. 168]; *Jones* v. *Richardson, supra,* 9 Cal.App.2d 657.)

■ A cause of action for malicious prosecution does not accrue until there has been a favorable termination of the action claimed to constitute the malicious prosecution. (*Ferraris* v. *Levy,* 223 Cal.App.2d 408 [36 Cal.Rptr. 30].)

The rule with regard to an action for wrongful attachment is the same; and the cause of action does not accrue during the pendency of an appeal on the action in which the attachment issued. (*Davis* v. *Fidelity & Deposit Co.*, 93 Cal.App.2d 13 [208 P.2d 414].)

■ A cause of action on the bond or for malicious prosecution, therefore, would not accrue until the present action might finally be determined; and may not be pursued in the very action in which the receiver was appointed.

We recognize that the part of the judgment under discussion and the finding upon which it is based do not purport to be upon a cause of action upon the bond or for malicious prosecution. The finding is a masterpiece of ambiguous potential. It suggests elements of conspiracy, that Smith was the agent of the receiver, and the receiver was the agent of Smith.

Under certain circumstances, a receiver may be held to be the agent of one or more parties to the action. (45 Am.Jur. § 129, p. 109.)

■ Under proper circumstances, vicarious liability for the conduct of a receiver might be placed upon a plaintiff, such as Smith, as a cause of action distinct from an action on the bond or for malicious prosecution. One of those circumstances, undoubtedly, must be the framing of a statement of ultimate facts upon which such liability might be founded, with an opportunity given to the other side to meet the charge.

Such a pleading must be a minimal requirement, even were it possible to have the question litigated in the same action in which the receiver was appointed.[2]

The making of the quoted finding VIII and of the part of the judgment based thereon which fixes liability upon plaintiffs is improper and constitutes reversible error.

The trial court found properly that the receivership was unnecessary and wrongfully obtained. The judgment is considered in part to terminate the receivership and discharge the receiver. In those respects it is sustained.

The court, therefore, might hold properly that the costs of the receivership and any compensation for the receiver must be borne by plaintiffs.

Liability for the expenses and fees of a receivership may properly be placed upon one of the parties to the litigation (*Stanton* v. *Pratt,* 18 Cal.2d 599, 603 [116 P.2d 609]; *Baldwin* v. *Baldwin,* 82 Cal.App.2d 851 [187 P.2d 429]; *Lewis* v. *Hall,* 38 Cal.App. 329, 336 [176 P. 171]), although not upon the plaintiff who has properly obtained the appointment and has established his cause of action (*Atlantic Trust Co.* v. *Chapman,* 208 U.S. 360 [28 S.Ct. 406, 52 L.Ed. 528]).

The court properly denied to the receiver attorney's fees incurred or paid by the receiver for services rendered after the appointment of the receiver. A sufficient reason is that the attorney was attorney also for the plaintiffs. (Rule 240(b), Cal. Rules of Court; *Hozz* v. *Varga,* 166 Cal.App.2d 539, 543 [333 P.2d 113]; *Adams* v. *Woods,* 8 Cal. 306, 322.)

Although an allowance of fees to such attorney for services rendered in obtaining the appointment of a receiver is proper (*Hozz* v. *Varga, supra,* 166 Cal.App.2d 539, 543), the court in the present action did not abuse its discretion in refusing credit to the receiver for all attorney's fees paid. The evidence is that the fees paid by the receiver were not for obtaining his appointment.

The court allowed plaintiffs attorney's fees of $4,000. Defendant has acquiesced in that award. Plaintiffs object that the judgment does not specify that the fees were awarded against defendant; the judgment may be amended to show that plaintiffs recover such fees from defendant.

The objection to the amounts with which the receiver has been charged for damage done to equipment during the receivership is not without merit.

---

[2] In the factual situation peculiar to *Link Belt Machinery Co.* v. *Hughes,* 195 Ill. 413 [63 N.E. 186, 59 L.R.A. 673], rent accrued during

Defendant Hill in his objections to the account filed by the receiver injected that issue, claiming that such damage was negligently done. The evidence as to the amount of such damage was informal and is in certain respects unsatisfactory. In one instance, no doubt through inadvertence, the finding is inconsistent with the evidence upon which it is based. Finding VII on the receiver's account is that damage to the large loader was $2,500 rather than $1,800 as testified to, and to the small loader, $1,800 rather than $2,500 as testified to.

The measure of damage for wrongful injury to personal property is the difference between the market value of the property immediately before and immediately after the injury, or the reasonable cost of repair if such cost be less than the depreciation in value. (*Fresno City Lines, Inc.* v. *Herman,* 97 Cal.App.2d 366, 372 [217 P.2d 987]; *Rhodes* v. *Firestone etc. Co.,* 51 Cal.App. 569 [197 P. 392].) The amount actually paid for repairs is some evidence of the reasonable value of necessary repairs (*Malinson* v. *Black,* 83 Cal.App.2d 375, 380 [188 P.2d 788]); and if such repairs have in fact been made, though there is no evidence as to depreciation in value, the court may not assume that the depreciation was of lesser amount than the cost of repairs. (*Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 24 [244 P.2d 395].)

If repairs have in fact not been made, the estimated cost of repairs reasonably necessary calls for expert testimony. (*LeBrun* v. *Richards.* 210 Cal. 308, 319, 320 [291 P. 825, 72 A.L.R. 336].)

Hill was not an expert in that field. Concerning the International and Peterbilt trucks, he said, "Nobody knew what it would cost to fix them" and then testified, "it would have cost at least three thousand dollars to fix the Peterbilt and probably another thousand dollars to fix the International." Concerning what it would cost to repair the crane, Hill testified: "Right about three thousand dollars. The Northwest people told me that's what it would cost to fix it."

There is no evidence in the record as to the value of any of the equipment either before or after the claimed negligent use, except as to two items, an International truck and a Peterbilt truck. Evidence as to diminution in value is not essential where repairs actually have been made. (*Pfingsten* v. *Westenhaver, supra,* 39 Cal.2d 12, 24.) In fact, no repairs were made to the trucks or to any of the equip-

---

the receivership was charged to the plaintiff creditor as an expense of the receivership in the action in which the receiver was appointed.

ment except one Euclid truck, repaired at an unstated cost, and a shovel, repaired at a cost of $500.

The evidence is insufficient to support the findings as to damage to equipment with the exception of the item of $500 for repairs actually made to the shovel.

Certain crusher jaws were replaced by the receiver at a cost of $1,900 instead of having been repaired as Hill would have done at a cost of $50. That resulted in charging the receiver with $1,850. If in the exercise of a reasonable discretion the receiver might have followed one course rather than another, he should not be held liable for a possible error in judgment. However, the trial court has passed upon that subject, and its finding that the expenditure was unnecessary will not be disturbed. The same may be said with regard to the other expenditures held to have been made improvidently. Those expenditures include the payments made to the attorneys and to an employee named Sovay.

Likewise, the trial court's finding with regard to sales made on credit to Valley Sand is upheld.

### Findings on Complaint and Cross-Complaint

As to the action itself, the court found that Hill is the owner of the real and personal property and the appurtenant rights and leasehold subject to Smith's vendor's lien and other security interest; that all of the tax liens mentioned had been paid in full at the time of the trial; that Smith's claim that certain of the equipment had been sold without his consent was not true; that Smith had told Hill that he should ignore the notice given January 26, 1961; that Smith consented to any defaults that occurred in making prompt payments by accepting late payments; and after serving the notice of January 26, 1961, accepted further payments without protest and without demanding strict compliance; that the appointment of a receiver was not necessary to prevent loss or injury to the business and property or for the protection of Smith's interest; that the sum of $4,000 was a reasonable amount to be allowed Smith for the services of his attorneys; that Smith, in the negotiations for the sale of the business, represented that the sale would include all of the assets including real property, leases, easements and rights owned by Smith connected with the business; that the consideration for the agreement was fair and reasonable to the plaintiffs; that Hill had expended sums in excess of $200,000 for improvements to the business and for the purchase of new equipment; that in 1956 or 1957, Smith had

assured Hill that lots 16 and 17 were appurtenant to the rock and gravel business for the purpose of stockpiling; that in reliance thereon Hill expended time, labor and money of a value in excess of $3,000 to prepare those lots for stockpiling; that the use of said lots for stockpiling was essential to the efficient and effective operation of the rock and gravel business; that Hill, ever since July 5, 1961, has been ready, willing and able to perform all of the terms and conditions of the agreement of March 1, 1952, and to pay to Smith all of the notes and obligations owing to him together with all costs properly attributed to the action and reasonable attorney's fees; that Hill had notified Smith of such readiness, willingness and ability; that the reasonable value of the business on June 2, 1961, was in excess of $350,000; that in reliance upon Smith's representation that all he was interested in was being paid his money, Hill endeavored to find purchasers for the business who would be ready, willing and able to pay the reasonable value thereof; that there was not any wrongful and malicious interference by Smith with Hill's attempted sale of the property; that stockpiling rights reserved to Smith in the condemnation action were at that time and at all times thereafter appurtenant to lots 14 and 15; that the true intent of the parties with regard to the lease with Lytle was that at the time Smith was to be paid in full, an assignment was to be executed assigning to Hill all rights of the plaintiffs in the lease, any renewal or extension thereof, and in the property covered thereby; that by reason of Smith's refusal to convey and to perform, Hill is being damaged by loss of interest at the rate of 7 per cent per annum on the sum of $227,000, plus loss of wages in the sum of $1,000 per month; and that Hill was entitled to an offset of $23,309.65 as the result of the finding that Smith was liable for the amounts chargeable to the receiver.

The court concluded that Hill was entitled to a decree of specific performance including a conveyance of the easement in lots 16 and 17 and an assignment of all rights in the lease from Lytle; upon the condition that Hill pay to Smith all moneys owing, together with interest to July 5, 1961, and that such sum should be deposited in an account in favor of Smith on or before 15 days of the date that the judgment becomes final, to be paid to Smith upon his compliance with the decree of specific performance; that Smith is entitled to costs incurred from the time of filing the complaint until July 5, 1961, excepting costs incurred with respect to the appointment of the receiver.

Smith contends that he was entitled, by reason of Hill's default, to have his title to the real property quieted; that right could not be denied him unless Hill pleaded and proved that Smith would realize more than the benefit of his bargain if the forfeiture were enforced; if there were such unjust enrichment it could result only in repayment to Hill of the amount by which Smith would be unjustly enriched by reason of the forfeiture; specific performance was neither pleaded nor proved; there was not any finding of a tender; the finding that Hill was ready, willing and able after July 5 to make payment in full was not equivalent to a finding of a formal tender; in fact there was not a tender by Hill; the language of the cross-complaint with regard to the payment of reasonable attorney's fees and "costs properly attributed to this action" was uncertain and meaningless; the demand for easement rights in lots 16 and 17 was a variance from the terms of the agreement; the claimed proof of ability and willingness was nugatory, being conditioned upon the close of an escrow and the consummation of the contemplated sale, the sufficiency of the proceeds to pay Smith and other creditors and the financial ability of the prospective purchasers, since Hill himself had no present financial ability to make payment; the rule that objections to the tender must be specified or they will be deemed to be waived has no application.

Smith's contention that he is entitled to enforce the forfeiture and that Hill's only relief could be the recovery of sums paid in excess of that which would make Smith whole is based upon *Baffa* v. *Johnson,* 35 Cal.2d 36 [216 P.2d 13] ; *Freedman* v. *Rector etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1] ; *Luz* v. *Lopes,* 55 Cal.2d 54 [10 Cal.Rptr. 161, 358 P.2d 289], and others. *Baffa, Freedman* and *Luz* are all cases in which it was held either that a purchaser was or was not entitled to recover payments made by him under the contract that had been forfeited. None of them touched upon the right of the purchaser to the benefit of his bargain and the denial of a right of forfeiture.

Plaintiffs have not distinguished clearly between rules applied by the courts in varying situations.

Where a contract of purchase has been abandoned by the purchaser, or rescinded by one party or both parties, or terminated by the seller, the purchaser, even though his fault has brought about the termination, may recover a part of what he has paid if the seller otherwise would be unjustly enriched. (*Harriman* v. *Tetik,* 56 Cal.2d 805 [17 Cal.Rptr. 134, 366 P.2d

486]; *Freedman* v. *Rector etc. of St. Matthias Parish, supra,* 37 Cal.2d 16; cf. *Ebbert* v. *Mercantile Trust Co.,* 213 Cal. 496, 500 [2 P.2d 776].)

Where such unjust enrichment would result from a forfeiture, a defaulting purchaser may have the contract reinstated upon proper conditions. (*Kay* v. *Kay,* 188 Cal.App. 2d 214, 219 [10 Cal.Rptr. 196]; *Scarbery* v. *Bill Patch Land & Water Co.,* 184 Cal.App.2d 87 [7 Cal.Rptr. 408]; *Petersen* v. *Ridenour,* 135 Cal.App.2d 720, 728 [287 P.2d 848].)

The foregoing rule does not depend upon the question of waiver or estoppel against the seller to insist upon strict compliance with the contract. (*Kay* v. *Kay, supra,* 188 Cal.App.2d 214, 217: implied finding against waiver; *Petersen* v. *Ridenour, supra,* 135 Cal.App.2d 720, 730: "no plea of waiver or estoppel.")

Where the purpose of a time and forfeiture clause is merely to secure payment of the purchase price, and there has been a waiver of strict compliance clauses by the vendor, the vendee is entitled to definite seasonable notice from vendor of the reestablishment of such conditions with reasonable opportunity for compliance before the vendor can declare a forfeiture. (*Gonzalez* v. *Hirose,* 33 Cal.2d 213 [200 P.2d 793]; *Stevinson* v. *Joy,* 164 Cal. 279, 285 [128 P. 751].)

The application of that rule does not depend upon section 3275 of the Civil Code, under which relief may be granted in appropriate circumstances even if the vendor has not waived strict compliance with a clause making time of the essence. (*Barkis* v. *Scott,* 34 Cal.2d 116, 118 [208 P.2d 367].)

The trial court did not in explicit terms find that there had been a waiver of the provision making time of the essence. The court has perhaps failed to find that after the doing of acts constituting waiver Smith failed to give notice that strict compliance would thereafter be demanded. If a waiver occurred, whether before or after the notice of January 26, the evidence would support only a finding that Smith did not thereafter give notice of the reestablishment of the requirement of strict compliance.

The finding of consent to the default in making prompt payment is tantamount to a finding of waiver; the further finding that notice of the requirement of strict compliance was not given follows by necessary implication as being essential to support the judgment. (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].)

The evidence amply supports such findings.

The court's finding that the easement for stock-piling on lots 16 and 17 was appurtenant to lots 14 and 15 finds sufficient support in the evidence. (*Owsley* v. *Hamner*, 36 Cal.2d 710 [227 P.2d 263, 24 A.L.R.2d 112].)

An intended easement will never be construed as personal when it may fairly be construed as appurtenant to some other estate. (*Wright* v. *Best*, 19 Cal.2d 368, 383 [121 P.2d 702].)

The finding that the retention by Smith of the remainder of the estate in the leasehold was for security likewise finds support in the evidence. In the supplement to the appellants' closing brief, it is stated that "the old lease from the Lytle Creek Water and Improvement Company had expired, and a new lease had been executed by the lessor to Hill. Without source material, the plant, whatever may have been its condition, would have been useless." (If Smith's title had been quieted.)

The statement, which has the appearance of an unintended admission of the force of Hill's argument that the leasehold went with the plant, goes outside the record so far as the making of a new lease to Hill is concerned. If true it indicates that Smith did not exercise the option to renew under the 1958 lease which was still in force at the time of trial.

Plaintiffs have taken, in their opening brief, the position that no relief could be accorded Hill unless it might be the return of some part of the purchase price under proof that plaintiffs insist was not made. In their closing brief and in a supplement thereto, while arguing that Hill has no right to such judgment, they postulate that a judgment of fore-closure of Hill's rights as purchaser, with a period of redemption upon conditions, would be the proper judgment rather than a decree of specific performance.

Plaintiffs in their opening brief attacked the sufficiency of the defendant's pleadings as the basis for a decree of specific performance. However, in the supplement to their closing brief, plaintiffs state that "the case was tried and decided upon the theory that Hill had the right to demand specific performance." This seems to eliminate the question whether Hill's right to specific performance was an issue.

They attack also the sufficiency of the evidence as to whether there was a tender by Hill and whether either he or his prospective purchasers had the ability to pay.

Specific performance may sometimes be decreed in favor of a purchaser in default under a contract that makes

time of the essence, where that requirement has been waived. (*Lifton* v. *Harshman,* 80 Cal.App.2d 422, 433 [182 P.2d 222].)

Nonetheless, there are serious problems as to the correctness of the decree for specific performance:

1. Unless Hill had the right to make payment in full his right to specific performance had not ripened.

2. Under the contract as written, there was no right to make prepayment nor would acceptance of prepayment be required. (*Record etc. Co.* v. *Pageman Holding Corp.,* 42 Cal.2d 227, 232 [266 P.2d 1].)

3. Hill's right to make prepayment, then, must depend upon one of three things: (a) whether the notice of January 26, 1961, which Hill was told to and did ignore, conferred a right upon Hill to make prepayment; (b) whether the commencement of the present action had the effect of making the whole amount of principal due and payable; or (c) whether Smith thereafter agreed to accept the entire balance in disregard of the terms of the contract. The court has not made a finding on any of those matters. ■ Concerning the first alternative, a notice ineffective for its intended purpose should not confer a right necessarily based upon the defeated purpose. As to the second alternative, if the January 26, 1961, notice failed of its purpose, Smith's only possible cause of action was to recover the then delinquent payments. As to the third alternative, the correspondence between counsel shows that Smith's first offer was to have the contract reinstated without his being paid in full; his last offer contemplated some additional payment to him in consideration of the tax consequences of receiving payment in full. An intermediate offer (letter of June 26, 1961) was not in terms, or by necessary implication, accepted.

■ 4. The court did not make a finding that Hill had tendered payment on July 5, 1961. The finding that Hill was ready, willing and able to pay, and had notified Smith that he was ready, willing and able to pay, is not necessarily equivalent to a finding that a tender had been made. (*Rottman* v. *Hevener,* 54 Cal.App. 485, 490 [202 P.2d 334].)

In requiring the payment of interest by Hill only to July 5, 1961, the decree demands a finding that a tender had been made on that date. The making of such nonexistent finding would call into play the court's view of the negotiations between counsel for the two parties during the month of June 1961, and the court's view as to whether the correspondence between counsel constituted an agreement to accelerate the maturity of the entire obligation owing to Smith, and of the

effect upon the question of acceleration of the notice given on January 26 and of the commencement of the action on June 2.

If Hill did not have the right to make full payment, absent a modification of the original purchase agreement, there was no tender which would abate the payment of further interest, fees and costs. A premature offer of performance is not a valid tender. (*Allen* v. *Chatfield*, 172 Cal. 60 [156 P. 47].)

If, on the other hand, Hill had the right to make payment in full and in good faith offered to do so, and without the imposition of any improper condition, the fact that payment was to be made through an escrow with funds furnished by a third party would not necessarily destroy the effect of the offer as a tender.

 Objections to the form of the tender may be waived, and are waived if the objections thereto are not specified. (Civ. Code, § 1501; *Reeves* v. *Hutson,* 144 Cal.App.2d 445, 452 [301 P.2d 264].)

 Such waiver may result from acquiescence of the obligee in a tender by deposit with an escrow agent (*Bodem* v. *Friedman,* 90 Cal.App.2d 225, 228 [202 P.2d 632]); from conduct of the obligee evidencing an intention to refuse a tender (*Moriarty* v. *Carlson,* 184 Cal.App.2d 51, 58, 59 [7 Cal.Rptr. 282]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 28, 29 [147 P.2d 583]).

We do not conclude that a finding that tender was made follows by necessary implication from other facts found by the court; nor does the evidence as a matter of law establish the fact of a tender, contingent as such a finding must be upon the defendant's right to make payment in full and other circumstances involved in a determination of the existence of such right.

Perhaps the only significant difference between a decree permitting Hill to reinstate the contract upon conditions, as was done in cases cited by Smith, and a decree of specific performance, would be with regard to the interest payable by Hill, for the following reason: if certain issues should be retried and others tried for the first time, it is likely that the time will have arrived within which the contract as written would be fully payable. In that event, should Hill make payment in full, he would be entitled to specific performance. The amount of interest he should pay will depend upon findings to be made upon the question of Hill's right to make premature payment in full, and tender.

 Since the cause must be remanded, if, after a determination of the matters touched upon herein, specific per-

formance should be decreed, there should be a finding as to whether the consideration for the sale was adequate, in addition to the finding already made that such consideration was fair and reasonable. (*Weneda Corp.* v. *Dispalatro,* 225 Cal.App.2d 187, 191 [37 Cal.Rptr. 267].)

The finding that Smith represented that all he was interested in was being paid his money is ambiguous as to whether it means all of the money owing to him in advance of the maturity date.

The finding that Hill is being damaged by loss of interest at the rate of 7 per cent per annum on the sum of $227,000, plus loss of wages in the sum of $1,000 per month, is contrary to the evidence which shows that Hill was being paid a salary of $1,000 per month at the time of trial.

To recapitulate, the following findings having to do with the hearing on the receiver's account and the objections thereto are held to be improper:

Finding No. 8 in its entirety.

The finding that $3,000 damage was done to a crane; that $2,500 damage was done to a large Hough loader; that $1,800 damage was done to a small Hough loader; that $3,000 damage was done to a Peterbilt truck; that $1,000 damage was done to an International truck; and that $4,000 damage was done to Euclid trucks.

The following findings based upon issues drawn by the complaint, and answers thereto, the cross-complaint and the answer thereto are held to be improper:

The finding that Hill is the owner of real and personal property and the appurtenant rights and leasehold.

The finding that by reason of Smith's refusal to convey and to perform, Hill is being damaged by loss of interest at the rate of 7 per cent per annum on the sum of $227,000, plus loss of wages in the sum of $1,000 per month.

The finding that Hill was entitled to an offset of $23,309.65 on the purchase price.

The finding that Smith represented that all he was interested in was being paid his money.

In all other respects, the findings of the trial court are proper, including findings of waiver of the requirement for strict compliance and that there had not been any notice of the reimposition of such requirement prior to the commencement of the action.

The following portions of the judgment are reversed: that part of the judgment decreeing specific performance, the part

decreeing that plaintiffs are indebted to defendant in the sum of $23,309.65, the part decreeing receiver chargeable with damage to the articles of equipment based on the findings hereinbefore held to be improper and that the receiver is indebted to the plaintiffs in the sum of $23,309.65, and that part ordering plaintiffs to pay all accounts payable of the receiver.

If upon a retrial it should be held that Hill was not entitled on July 5, 1961, to make payment in full, the trial court should reconsider the amount of attorney's fees recoverable by plaintiffs as well as the date to which plaintiffs would be entitled to recover costs, other than costs incident to the receivership. If there should not be any change in the amount of attorney's fees awarded or in the date to which costs incurred by the plaintiffs would be recoverable by them, the trial court is ordered to amend the judgment to provide that the attorney's fees and costs of plaintiffs be recovered from the defendant and to make it clear that it is the plaintiffs rather than their attorney who are entitled to recover such fees and costs from the defendant.

As hereinabove expressed, a decree of specific performance, should one be decreed upon a retrial, will call for a finding as to whether the consideration for the sale was adequate.

In all other respects than those as to which it has been reversed or ordered amended, the judgment is affirmed.

The cause is remanded for further proceedings in accordance with the views expressed herein. Each party to bear his own costs on appeal.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 18, 1965.